642 September 11, 2015 No. 32

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

SCOTT MICHAEL ASHKINS,
*Petitioner on Review.*

(CC 10C42610; CA A150038; SC S062468)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 8, 2015.

Jason E. Thompson, Ferder, Casebeer, French & Thompson, LLP, Salem, argued the cause and filed the brief for petitioner on review.

Jamie K. Contreras, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

BREWER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

\* Appeal from Marion County Circuit Court, Albin W. Norblad, Judge. 263 Or App 208, 327 P3d 1191 (2014).

**BREWER, J.**

Defendant, who was convicted after a jury trial on one count of sodomy, one count of rape, and one count of unlawful sexual penetration, argues that the trial court erred in failing to give his requested jury instruction that ten jurors must agree on what factual occurrence constituted each of the offenses. The Court of Appeals held that the trial court correctly declined to give the requested instruction. *State v. Ashkins*, 263 Or App 208, 327 P3d 1191 (2014). On review, defendant argues that the circumstances of this case fall within the rule providing that, when a single crime has been charged but the evidence is sufficient for the jury to find that there were multiple, separate occurrences of the charged crime involving the same victim and the same per- petrator during the period of time alleged in the indictment, the state either must elect which occurrence constituted the charged crime or, alternatively, the defendant is entitled to an instruction that ten or more jurors must concur on which occurrence constituted that crime.[1] *State v. Pipkin*, 354 Or 513, 316 P3d 255 (2013) (stating rule); *see also State v. Boots*, 308 Or 371, 780 P2d 725 (1989) (describing necessity of jury concurrence on material elements of a crime). We conclude that the trial court erred in failing to give defendant's pro- posed concurrence instruction in this case. We further con- clude, however, that the error was harmless, and we there- fore affirm defendant's convictions.

## I.   FACTS AND PROCEDURAL BACKGROUND

Defendant was charged with first-degree rape, sodomy, and unlawful sexual penetration against his step- daughter, CS, beginning when CS was approximately 12 years old. The indictment alleged that the crimes occurred between January 1, 2007, and March 23, 2010. The pertinent

---

[1] As the source of his argument, defendant primarily relies on Article I, sec- tion 11, of the Oregon Constitution, which provides, in part: "[I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict." Defendant asserts, alternatively, that the Sixth Amendment to the United States Constitution imposes a similar requirement. Because we base our decision in this case on Article I, section 11, we do not reach defendant's federal constitutional argument.

charges, which were read to the jury as part of the court's preliminary instructions, were as follows:

"COUNT 01    The defendant, on or between January 1, 2007 to March 23, 2010, in Marion County, Oregon, did unlawfully and knowingly engage in sexual intercourse with [CS], a child under the age of sixteen years, the said [CS] being the said defendant's spouse's child.

"COUNT 02    In an act of the same or similar character but not part of the same criminal episode as alleged in Count 1 above, the defendant, on or between January 1, 2007 to March 23, 2010, in Marion County, Oregon, did unlawfully and knowingly engage in deviate sexual intercourse with [CS], the said [CS] being the said defendant's spouse's daughter.

"COUNT 03    In an act of the same or similar character but not part of the same criminal episode as alleged in Count 1 and Count 2 above, the defendant, on or between January 1, 2007 to March 23, 2010, in Marion County, Oregon, did unlawfully and knowingly penetrate the vagina of [CS], a person under the age of fourteen years, with an object other than the defendant's penis or mouth, to wit: his finger."[2]

Defendant began dating the victim's mother in 2002, and they married in 2003. The victim's older brother, who is severely disabled, lived with the family, as did defendant's son until he moved out in 2007. The state presented evidence that, after defendant's son moved out and until shortly before defendant and CS's mother separated in 2010, defendant committed numerous sexual offenses against CS.

The state's evidence consisted primarily of the testimony of CS. CS was 17 years old at the time of trial and was developmentally delayed. It may be inferred from her testimony that she is not adept with concepts such as dates, ages, and timelines. CS testified, for example, that defendant had moved in with her and her mother the year before trial, but she also testified that she had been living with her grandmother in the year before trial, that defendant had moved in with her and her mother when CS was in middle school, and

---

[2] Defendant was acquitted of a weapons-related charge that is not at issue on review.

that defendant had married her mother and moved in with them in 2002 or 2003. CS's descriptions of the offenses were in many respects nonspecific. She was unable to recall with clarity various statements that she previously had made about sexual abuse by defendant. Evidence was presented that, at various points, CS had given differing accounts of precisely what had occurred and how many times, that she initially had disclosed only two rapes and not any other sexual offenses, and that before defendant and her mother separated, CS had denied that any abuse had occurred.

As pertinent to the rape charge, CS testified that defendant had sexual intercourse with her on several occasions. CS identified three different locations where sexual intercourse had occurred: on a couch in the living room, on a table, and in her mother's bedroom. With respect to the table, CS described the table variously as oval-shaped and rectangle-shaped, and she testified that intercourse had occurred while she was on the edge of the table. She stated that her mother was at work and her brother was in his bedroom. She also testified that her clothes were off and defendant's pants were off but his shirt was on. She stated that she did not call for help because she was afraid. With respect to the bedroom, CS testified that defendant put her on the bed, but she could not recall specific details.

Without reference to a particular occurrence or location, CS testified that defendant sometimes used baby oil from a small purple bottle as a lubricant.[3] She further testified that defendant sometimes gave her drugs and that she had passed out, then awakened, to find him having intercourse with her. On cross-examination, CS acknowledged that she previously had told an interviewer that the sexual intercourse had occurred only twice, and only in the living room.

With respect to the sodomy charge, CS testified without differentiation about incidents in which defendant grabbed her hair and caused contact between his penis and

---

[3] A police investigator, Hingston, who talked to CS several times in the course of the criminal investigation, testified that CS previously had reported to him that defendant had used baby oil as a lubricant when he had sexual intercourse with her.

CS's mouth. CS used the phrase "sucking" to describe the contact; however, she later testified that defendant's penis had not entered her mouth and that she did not know what "suck" meant. On cross-examination, CS acknowledged that she had not reported any sodomy incidents to the initial interviewer. Detective Hingston testified that CS also had told him that defendant had touched his "front privates" to her mouth on three occasions and that it was "gross."

With respect to the unlawful sexual penetration charge, CS testified that defendant had penetrated her vagina with his fingers, that she had been 11 or 12 years old when it first occurred, and that defendant would pull her pants down and touch her vagina. She testified that it had happened on the couch, and that "sometimes" defendant told her to come with him to her mother's bedroom and that he would then put his fingers into her vagina and try to take off her clothes. CS testified that she did not call for help because nobody could hear her. She also testified that defendant had penetrated her vagina with an object that she described as a "red rocket." She testified that it hurt, but that she did not call for help because her mom was at work and nobody could hear her. CS acknowledged that she had not reported any of those incidents to the initial interviewer. However, Detective Hingston testified that CS had told him that defendant had penetrated her with the toy "red rocket" on eight occasions, and that defendant had made the toy himself.[4]

Defendant testified that no sexual contacts occurred between himself and CS. Defendant's theory of the case was that the charges were fabricated by CS's mother and grandmother in the context of the separation and dissolution of his marriage to CS's mother.

At the close of the evidence, defendant requested the following jury instruction:

---

[4] The state presented other evidence that defendant had a sexual relationship with or sexual interest in CS, such as photos that he had taken of her uncovered breast and pubic area and other photos of her on which he had written sexual comments. Evidence also was adduced that defendant had asked CS to dress in her mother's lingerie, and commented about wanting to marry her. In addition, the state introduced evidence, including video evidence, that CS and defendant shared a bed at times. None of that evidence, however, constituted direct evidence of the three charged sexual offenses.

> "In order to reach a lawful verdict as to any count, 10 jurors must agree on what factual occurrence constituted the crime. Thus, in order to reach a guilty verdict on any count, 10 jurors must agree on which factual occurrence constituted the offense."

The trial court declined to give that instruction. The jury convicted defendant of the three offenses at issue, and this appeal ensued.

Before the Court of Appeals, defendant contended, among other arguments, that the trial court erred in declining to give the quoted instruction. The Court of Appeals concluded that the need for a jury concurrence instruction was not

> "implicated where the evidence suggests that the crime was committed on multiple occasions but does not provide the jurors with enough specifics to distinguish one occasion from another in a way that would allow them to draw conflicting conclusions regarding the crime committed. That is particularly true where factual distinctions between different instances are not contested."

*Ashkins*, 263 Or App at 222-23. Relying in part on this court's decision in *State v. Sparks*, 336 Or 298, 83 P3d 304, *cert den*, 543 US 893 (2004), the Court of Appeals concluded that "a jury concurrence instruction is not required as to the precise location or circumstances of defendant's various acts of abuse." *Id.* at 223.[5]

On review, defendant asserts that the Court of Appeals erred in failing to adhere to this court's analysis of jury concurrence instruction requirements in *Pipkin*. We allowed review to consider whether, and if so, how, the jury concurrence requirement applies in situations where a single occurrence of each charged crime is alleged, but largely nonspecific and undifferentiated evidence is presented that the crime was committed by the same perpetrator against the same victim during separate occurrences within the time period alleged in the indictment.

---

[5] In reaching its conclusion, the Court of Appeals also relied in part on its prior decisions in *State v. Garcia*, 211 Or App 290, 154 P3d 730, *rev den*, 343 Or 160 (2007), and *State v. Pervish*, 202 Or App 442, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006). We discuss those cases below because the state urges us to adopt a variation on the rationale of those cases here.

## II.   ANALYSIS

### A.   *Standard of Review*

We review a trial court's failure to give a requested jury instruction for errors of law. *State v. Reyes-Camarena*, 330 Or 431, 441, 7 P3d 522 (2000). Generally speaking, an instruction is appropriate if it correctly states the law and is supported by evidence in the record, when the evidence is viewed in the light most favorable to the party requesting the instruction. *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009).[6] A trial court, however, is not required to give a requested instruction if another instruction adequately addresses the issue. *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993).

### B.   *The Parties' Arguments on Review*

As noted above, defendant argues, based on *Pipkin*, that when a single occurrence of a crime is charged but evidence of multiple separate occurrences of that crime involving the same victim and the same perpetrator is adduced, the state either must elect a particular occurrence or the defendant is entitled to a jury concurrence instruction. It follows, defendant reasons, that the trial court erred in failing to give the concurrence instruction that he requested. For its part, the state acknowledges the rule on which defendant relies, but it urges this court to recognize an exception "[i]n cases where the evidence establishes multiple occurrences of a crime but the evidence is nonspecific and undifferentiated." In such circumstances, the state argues, a trial court should not give a concurrence instruction because "no genuine risk exists that the jurors will reach differing conclusions as to specific incidents." Alternatively, the state suggests an approach that has been followed in several other jurisdictions: In cases involving such evidence, the state either may elect

---

[6] At oral argument, the state argued that the touchstone of our standard of review should be whether the lack of a concurrence instruction would cause "jury confusion." *See, e.g.*, *State v. Hale*, 335 Or 612, 627, 75 P3d 448 (2003) (noting that lack of concurrence instruction could cause "jury confusion"). Although that consideration is relevant to the analysis, it does not embody our standard of review; as with other failure-to-instruct challenges, the very nature of the inquiry into whether a jury concurrence instruction is required dictates that all the evidence must be considered in the light most favorable to the party seeking the instruction.

or the jury should be instructed that it either must concur on a specific occurrence or concur that the defendant committed all the acts described by the victim. Finally, the state argues that, if a concurrence instruction should have been given in this case, the error in failing to do so was harmless.

C.  *Jury Concurrence When a Single Violation is Charged But the Evidence Permits a Finding of Multiple, Separate Occurrences of the Crime*

This court has stated that a defendant's right to jury concurrence arises from Article I, section 11. *See Pipkin*, 354 Or at 518 n 6. In *Pipkin*, this court divided that right into two broad categories and explained the scope of each. "One situation occurs when a statute defines one crime but specifies alternative ways in which that crime can be committed." *Id.* at 516. In that situation, if the legislature intended the crime to have alternative statutory elements, jury concurrence is required, whereas if the legislature merely specified different factual ways of proving the same element, jury concurrence is not necessary. *Id.* "The other situation arises when the indictment charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime." *Id.* at 517. With respect to that second category,

"[o]rdinarily, a defendant faced with that problem can ask the state to elect the occurrence on which it wishes to proceed and, in that way, limit the jury's consideration to a single occurrence. *See, e.g.*, *State v. Lee*, 202 Or 592, 276 P2d 946 (1954); *State v. Ewing*, 174 Or 487, 496, 149 P2d 765 (1944). Alternatively, [*State v. Hale*, 335 Or 612, 75 P3d 448 (2003) and *State v. Lotches*, 331 Or 455, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001)] hold that a defendant can ask for an instruction requiring jury concurrence on one of the several occurrences that the record discloses."

354 Or at 517.[7]

---

[7]  Some courts have described this type of principle as an "either/or" rule. *See, e.g.*, *State v. Petrich*, 101 Wash 2d 566, 683 P2d 173 (1984) (describing rule); *State v. Kitchen*, 110 Wash 2d 403, 756 P2d 105 (1988) (applying rule, but concluding error was harmless); *see also State v. Crane*, 116 Wash 2d 315, 804 P2d 10 (1991) (recognizing that the rule does not apply when multiple acts are part of the same course of conduct). *Cf. Pipkin*, 354 Or at 517-18 (indicating that Oregon follows the "either/or" approach, albeit not specifically addressing the issue in the context of nonspecific and undifferentiated evidence in sexual abuse cases).

The parties agree that only the second jury concurrence category described in *Pipkin* is potentially implicated in this case.[8] To determine whether it applies to the charges on which defendant was convicted, it is helpful to review several of this court's earlier decisions.

Our first jury concurrence decision, *Boots*, did not actually address whether or when a concurrence instruction should be given. Rather, in that case, the trial court had given an erroneous *nonconcurrence* instruction to the jury. The defendant had been charged with aggravated murder, the state had alleged two different aggravating circumstances that elevated the crime to aggravated murder, and the trial court had instructed the jury that it was not necessary for its members to agree on which of the two aggravating circumstances had been proved. 308 Or at 374-75. In holding that giving the nonconcurrence instruction was erroneous, this court stated:

> "We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (or the indictment) has made essential to the crime."

*Id.* at 379. *See generally State v. King*, 316 Or 437, 852 P2d 190 (1993) (jury was not required to concur about whether defendant committed DUII by driving with blood alcohol content above statutory limit or driving while perceptibly impaired by alcohol, as those were simply factual details about how single element of offense could be proven).

*Lotches* was the first case following *Boots* in which this court addressed the second category described in *Pipkin*. In *Lotches*, the defendant was convicted on three counts of the aggravated murder of a single victim, each premised on a different aggravating circumstance. Unlike in *Boots*, the jury in *Lotches* did separately consider each of the three aggravating circumstances; the issue in *Lotches* was whether the jury should have been instructed that it must concur "as to the identity of the victim of the underlying

---

[8] *Pipkin* itself involved the first category of situations in which a concurrence right exists. 354 Or at 518. The particular circumstances of that case are not relevant to our analysis here.

felony" with respect to each aggravating circumstance. The three theories alleged were aggravated murder in the course of and in furtherance of attempted first-degree robbery, attempted second-degree kidnapping, and attempted murder. 331 Or at 462-63. The state had adduced evidence that, in the course of events leading up to the murder, the defendant had robbed or attempted to rob two individuals, had attempted to kidnap two individuals, and attempted to kill two others (none of whom were the aggravated murder victim). *Id.* at 470-71. This court noted that the state appeared to concede "the notion that, if there is a possibility of jury confusion, the identity of the victim or the circumstances of the underlying felony is information that is material and for which jury unanimity is required." *Id.* at 470 (emphasis omitted). The court went on to hold that the trial court had plainly erred in failing to require jury concurrence as to the identity of the victims of the underlying felonies. *Id.* at 471-72.

Soon after deciding *Lotches*, this court addressed a similar plain error challenge in *Hale*, another aggravated murder case. In that case, the defendant and his accomplice Susbauer committed a series of crimes, culminating in the murder of three children. 335 Or at 615-16. The aggravated murder charges alleged as aggravating circumstances various underlying felonies of sexual abuse and murder. Susbauer entered into a plea agreement and testified that the defendant was the principal and that Susbauer had been an unwilling accomplice. The defendant's theory of the case, on the other hand, was that Susbauer had personally committed the underlying crimes. The problem—similar to the problem in *Lotches*—was that there was evidence of multiple victims with respect to those underlying crimes, and there was conflicting evidence as to which of the two perpetrators had committed them. *Hale*, 335 Or at 625-27. The trial court gave no jury concurrence instruction and did not require the state to elect a particular instance involving a particular victim and a particular perpetrator with respect to each offense. The defendant was convicted of thirteen counts of aggravated murder. On review, this court concluded:

"We agree with defendant that, because the instructions that the jury was given with respect to each of the

aggravated murders counts based on the crimes of third-degree sexual abuse and murder did not either limit the jury's consideration to a specific instance of third-degree sexual abuse or murder, committed by a particular perpetrator against a particular victim, or require jury unanimity concerning a choice among alternative scenarios, each instruction carried an impermissible danger of jury confusion as to the crime underlying each count."

*Id.* at 627.

In a subsequent aggravated murder case, however, this court rejected the defendant's plain error argument with respect to jury concurrence. In *State v. Sparks*, 336 Or 298, 83 P3d 304 (2004), the defendant was convicted on 15 counts of aggravated murder of a single victim, based on various theories of aggravation, including the commission of five different underlying offenses. 336 Or at 312. The murder and each of the underlying offenses were committed against the same victim within a period of several hours. *Id.* at 300-01. The jury considered each count, and thus each aggravating circumstance, separately, and the defendant raised no objection to how the jury was instructed. On appeal, the defendant noted that the evidence could have supported a determination that the underlying offenses occurred either in the defendant's bedroom or at the location where he later moved the victim's body. *Id.* Relying on *Lotches*, the defendant argued that "the evidence presented at trial could have supported more than one of each instance of each of the five underlying crimes." *Id.* Although this court acknowledged its statement in *Hale* about limiting "the jury's consideration to a specific instance" of an underlying offense, the court further noted that that statement was followed by the qualifying phrase, "committed by a particular perpetrator against a particular victim." *Id.* at 316. The court concluded:

"In *Lotches*, there were multiple possible victims for each of the underlying crimes. Similarly, in *Hale*, there were multiple possible victims and two possible perpetrators of each of the underlying crimes. In both of those cases, the jury was presented with multiple factual theories for each of the underlying crimes. It is not reasonably in dispute that a jury's failure to agree unanimously on either *the victim* or

*the perpetrator* of the crime would violate the jury unanimity rule, because both those facts are material elements of the underlying crimes.

"In this case, however, it is not 'obvious' that a jury's failure to agree unanimously on the precise location where defendant may have perpetrated the underlying crimes against the single victim would violate the jury unanimity rule. Nothing about the crimes charged in this case demonstrates that the precise location of the underlying crimes constitutes a material element of those crimes on which the jury must agree unanimously. In fact, the location of those crimes more logically constitutes a 'factual detail' that does not require jury unanimity. *Boots*, 308 Or at 379."

*Sparks*, 336 Or at 316-17 (emphasis in original).

*Sparks* marked this court's last examination of a situation implicating the second category of situations in which a concurrence right exists. However, none of this court's previous decisions, including *Sparks*, involved the precise situation at issue here, to which we now turn.

D.  *Application of Concurrence Right Where Evidence of Multiple Occurrences of a Single Charged Crime Involving the Same Parties is Nonspecific and Undifferentiated*

In the wake of *Sparks*, the Court of Appeals addressed jury concurrence issues that were somewhat similar to the one presented here, albeit in the context of unpreserved challenges. In *Pervish*, the defendant was charged with multiple instances of promoting and compelling prostitution. The facts were complicated, involving multiple victims and multiple acts of prostitution alleged as to several of the victims. The defendant argued that the trial court had plainly erred in failing to give a concurrence instruction requiring 10 jurors to agree on "specific factual incident[s] involving" each prostitute victim. 202 Or App at 442. The Court of Appeals concluded that no error was apparent. It observed: "The very generality of the evidence pertaining to [one of the challenged counts] ameliorated any risk that members of the jury could have picked different factual incidents in convicting defendant of that charge." *Pervish*, 202 Or App at 459.

Later, in *Garcia*, 211 Or App at 293, the Court of Appeals addressed a similar problem involving a child sexual abuse victim who was unable to "relate detailed accounts of specific occasions of abuse." *Id.* at 293-94. Relying on *Sparks*, the court stated that a concurrence instruction is required only if the evidence demonstrates the possibility of juror disagreement as to "material elements," and concluded that "it is not 'obvious' that the location in which a sexual offense took place constitutes such a material element." *Garcia*, 211 Or App at 295. The court further stated:

> "In addition, a *Boots* instruction is required only when there is a real possibility of juror confusion with respect to the evidence as it relates to each charge. When the state's evidence is so general that it simply is not possible that the jurors might have disagreed about specific instances underlying the various charges—because they were not given evidence of specific instances on which they might disagree—it is not error for the court to fail to give a *Boots* instruction."

*Id.* at 296.

In a nutshell, both *Pervish* and *Garcia* suggested that, in the context of nonspecific and undifferentiated evidence of multiple occurrences of a single charged offense, a jury concurrence instruction may have been unnecessary because there would have been no basis for the jurors to choose any particular occurrence as the one proven.[9]

---

[9] By contrast, in *State v. Houston*, 147 Or App 285, 287, 935 P2d 1242 (1997), the state charged the defendant with delivery of a controlled substance, but "produced evidence that the crime could have occurred at any of six *different* times." (Emphasis added.) In that circumstance, the Court of Appeals concluded that the case was unlike *King*, "in which the state merely offered alternative evidence of a single factual occurrence," but rather that the defendant was entitled to a jury concurrence instruction under the rationale of *Boots*, because the jury had been "allowed to base its verdict on alternative factual occurrences, each of which itself would be a separate crime." *Id.* at 292. The court distinguished *Houston* in *State v. Greeley*, 220 Or App 19, 24-25, 184 P3d 1191 (2008), which involved proof of several reckless acts while driving over the course of about four minutes. The defendant in *Greeley* had requested an instruction requiring the jury to agree on a specific reckless act, but the Court of Appeals held that "the state was entitled to rely on the entire course of defendant's driving to establish the element of recklessness." *Id.* at 26. *Houston* and *Greeley* are consistent with our statement in *Pipkin* that a jury concurrence instruction is required when "the evidence permits the jury to find multiple, *separate* occurrences of that crime." 354 Or at 517 (emphasis added).

As noted, relying in part on *Pervish* and *Garcia*, the state urges that where the evidence establishes multiple occurrences of a single charged crime but the evidence is nonspecific and undifferentiated, a trial court should not give a special concurrence instruction because no genuine risk exists that the jurors will reach differing conclusions as to specific incidents. The rationale for such an exception to the concurrence requirement was aptly stated in *People v. Jones*, 51 Cal 3d 294, 305, 270 Cal Rptr 611, 792 P2d 643 (1990):

> "[A child], assertedly molested over a substantial period by a parent or other adult residing in [the] home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents. (Indeed, even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance.)"

(Citation omitted.)[10]

In *Jones*, the defendant was charged with sexual offenses against multiple victims, including children in the defendant's home; the indictment alleged that the abuse occurred over a two-year period. 51 Cal 3d at 301-02. One of the children was able to identify locations where the defendant had committed the charged offense, but was not able to specify dates or "additional details to further identify these acts." *Id.* at 302. The court concluded that, if adequate jury instructions were given, the defendant's right to jury concurrence was not violated where the evidence of the crimes was "generic":

> "As for the necessity of a unanimous jury on specific charges, we acknowledge \* \* \* the requirement of [unanimity under the California constitution]. But we reject the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases,

---

[10] *See also R.L.G. v. State*, 712 So 2d 348, 356 (Ala 1997) (evidence of "abuse of a young child by an abuser residing with the child [such that the] abuser could perpetuate the abuse so frequently and in so many locations that the young child loses any frame of reference in which to compartmentalize the abuse" has been termed "generic evidence").

although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described.

"As previously stated, even generic testimony describes a repeated series of specific, though indistinguishable, acts of molestation. The unanimity instruction assists in focusing the jury's attention on each such act related by the victim and charged by the People. We see no constitutional impediment to allowing a jury, so instructed, to find a defendant guilty of more than one indistinguishable act, providing the three minimum prerequisites heretofore discussed are satisfied.

"* * * * *

"* * * [I]f an information charged two counts of lewd conduct during a particular time period, the child victim testified that such conduct took place three times during that same period, and the jury believed that testimony in toto, its difficulty in differentiating between the various acts should not preclude a conviction of the two counts charged, so long as there is no possibility of jury disagreement regarding the defendant's commission of any of these acts."

*Id.* at 321 (citations omitted).

The court in *Jones* held that, in situations where jurors might disagree about the act committed, a standard concurrence instruction should be given. It further held, though, that "when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction." *Id.* The court described such an instruction as allowing a conviction if the jury agreed on "specific acts" or that "the defendant committed all the acts described by the victim." *Id.* at 321-22; *see also Thomas v. People*, 803 P2d 144 (Colo 1990) (adopting approach in *Jones*).

We appreciate the practical appeal of such an approach. A child's difficulty in distinguishing among multiple similar past events generally is within a jury's ability to evaluate, and such an instruction might encourage the jury to turn directly to fundamental questions concerning

credibility. Moreover, as a conceptual matter, such an instruction does not misinform the jury about the concurrence requirement. A jury that determines that a defendant committed "all of the acts" necessarily would find that the defendant committed each of the specific acts.[11]

Such an instruction is not, however, free from its own problems. The instruction endorsed in *Jones* was phrased in terms of what the jury may do if it agrees that "the defendant committed *all* of the acts described by the victim." *Jones*, 51 Cal 3d at 322 (emphasis added); *see also Thomas*, 803 P2d at 154. Such an instruction could cause jury confusion where the complaining witness has made conflicting statements about what occurrences involved what acts, how many occurrences there were, or whether in fact any crimes occurred at all. *See, e.g.*, *R.L.G. v. State*, 712 So 2d 348, 352 (Ala 1997) (child victim made numerous specific disclosures before trial, but at trial testified she did not remember making disclosures and that defendant had never hurt her); *State v. Becker*, 211 Or App 1, 6, 153 P2d 158, *rev den*, 343 Or 223 (2007) (conviction was based on child's out-of-court disclosures of sexual abuse, although child recanted at trial and indicated she had fabricated the disclosures). Such a scenario is sufficiently common in child sexual abuse cases that a body of law has developed concerning the admissibility of testimony about it. *See, e.g.*, *State v. Middleton*, 294 Or 427, 437, 657 P2d 1215 (1983) (discussing admissibility of expert evidence on typical child victim reactions to familial sexual abuse, including inconsistent statements and recantation). Indeed, evidence was presented at trial in this case that children often do not initially disclose the full extent of sexual abuse and that they can become confused about details when abuse occurs over long periods of time. In short, depending on the nature of the evidence,

---

[11] Other jurisdictions have dealt with the "undifferentiated evidence" dilemma in child sexual abuse cases by treating a single alleged crime as a continuing or aggregated offense, or by enacting "continuing child sexual abuse" statutes. *See generally R.L.G.*, 712 So 2d at 358-60 (describing case law and statutes); Note, *Jury Unanimity and the Problem with Specificity: Trying to Understand What Jurors Must Agree About by Examining the Problem of Prosecuting Child Molesters*, 91 Texas Tech L Rev 1203 (2013) (describing continuing child sexual abuse statutes and their potential constitutional infirmities). The state does not assert that the criminal statutes at issue here could be interpreted in such a manner.

asking jurors to determine what constitutes "all" of the acts described by a complaining child witness could pose as difficult a challenge as asking them to determine what constitutes a "factual occurrence" under a concurrence instruction in the second category of cases described in *Pipkin*.

That said, this case does not require us to determine whether an instruction such as the one approved in *Jones* should have been given, because no such instruction was requested.[12] The question, rather, is whether the instruction requested by defendant was, in fact, a correct statement of the law.

With respect to that question, the fact that evidence of multiple occurrences of a single charged crime is nonspecific and undifferentiated does not obviate the risk that jurors will fail to agree by the requisite degree of concurrence on the act that constitutes the charged offense. *See, e.g.*, *State v. Ewing*, 174 Or 487, 496, 149 P2d 765 (1944) (reversing defendant's conviction because trial court failed to require an election where it was "entirely possible that some of the jurors may have found the defendant guilty of one of the prohibited acts, while others relied upon some other and different alleged act"). Stated differently, the rationale underlying the concurrence right is not satisfied merely because the state's witnesses may have difficulties in recalling, recounting, or distinguishing among separate occurrences of a particular crime.

Nor does this court's decision in *Sparks* suggest a different conclusion. Although this court in *Sparks* distinguished *Hale* and *Lotches* on the ground that they involved aggravating circumstances where the jury could mix and match multiple victims or perpetrators, the court in *Sparks*

---

[12] In this case, the evidence of sodomy might be described as classically "generic" in that the victim identified no locations or specific instances for those occurrences. On the other hand, although some of the victim's statements with respect to the rape and unlawful sexual penetration charges were generic, others provided at least some detail. Given our conclusion set out below, 357 Or at 659-60, that defendant's requested instruction was legally correct and should have been given, we express no opinion on whether (or as to which charges) the trial court properly could have given an instruction such as the one endorsed in *Jones*, if such an instruction had been requested. *See generally State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996) ("We review a trial court's choice among legally correct requested jury instructions that provide the necessary information for abuse of discretion.").

ultimately concluded that the concurrence requirement had not obviously been violated because there was no indication that the precise location of the underlying crimes constituted a material element of those crimes on which the jury must agree unanimously. *Sparks*, 336 Or at 317. Although, like *Sparks*, this case involves a single perpetrator and a single victim, the issue here is not whether the fact on which jurors might fail to agree constituted a material element of an offense; the issue, rather, is whether jurors must agree on the same occurrence in reaching a verdict on a single count of a charged crime. Unlike *Sparks*, the situation in this case fits precisely within the second category described in *Pipkin*.[13] The indictment here charged a single occurrence of each offense, but the evidence permitted the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator.

Accordingly, the state in this case was required to elect which occurrence it would prove or, alternatively, defendant was entitled to a concurrence instruction. *Pipkin*, 354 Or at 517. The state made no election, and thus, defendant was entitled to a concurrence instruction that correctly stated the law. The instruction requested by defendant, that "10 jurors must agree on which factual occurrence constituted the offense," was a correct statement of the law as it applies to the circumstances of this case. *Boots*, 308 Or at 378-79.[14] It follows that the trial court erred in declining to give that instruction.

---

[13] In *Sparks*, a plain error case, this court did not directly address the defendant's argument that the evidence supported a finding of multiple instances of the crimes underlying each count of aggravated murder. Instead, because the "defendant [did] not explain why the location of the underlying crimes constitute[d] a fact that the law makes essential to those crimes," the court concluded that it was not "obvious" that a jury's failure to agree unanimously on the location at which the underlying crimes were committed would violate the concurrence requirement. 336 Or at 317.

[14] We emphasize that our holding is a narrow one, based on the factual circumstances of this case, where defendant was charged with a single count of each offense, and the evidence disclosed separate occurrences of each offense involving the same victim and the same perpetrator within the time period alleged in the indictment. The analysis may vary under different circumstances—for example, where multiple counts of the same offense are charged or the evidence discloses multiple criminal acts during the same occurrence. In addition, as noted, we do not foreclose the possibility that the type of modified instruction proposed by the state might be appropriate in some circumstances.

E. *Harmless Error*

The question remains whether the trial court's failure to give the requested instruction constituted reversible error. Defendant asserts that reversal is required because CS testified at trial to multiple occurrences of each of the charged offenses, and jurors could have disagreed as to which occurrence constituted the single charged count of each offense. The state counters that the error was harmless because the evidence provided no rational basis for jurors to differentiate among multiple occurrences of the same offense.

"Under Oregon law, a verdict against a criminal defendant may be affirmed notwithstanding trial error if the error did not affect a 'substantial right' of the defendant." OEC 103(1). This court has interpreted this to mean that the verdict may be affirmed if there is "little likelihood that the error affected the verdict." *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987); *see also State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988).[15] In making that determination, the court considers the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue. *State v. Lopez–Minjarez*, 350 Or 576, 578, 260 P3d 439 (2011) (to assess whether error in instructing jury substantially affected appellant's rights on various charges involved, "it is important to describe both sides' respective evidence and theories of the case"); *see also State v. Phillips*, 354 Or 598, 613, 317 P3d 236 (2013) (erroneous failure to give jury concurrence instruction did not substantially affect defendant's rights because, "on the facts in this case, the factual findings necessary to find defendant liable on one theory either subsumed or were the same as the factual findings on the other theory"); *Hale*, 335 Or at

---

[15] As noted above, defendant also has asserted that the Sixth Amendment to the United States Constitution includes a jury concurrence requirement. Because we have resolved defendant's claim of error under Oregon law, it is not necessary to consider defendant's federal constitutional argument. We note, however, that the applicable standard under the federal constitution is that the error must be harmless beyond a reasonable doubt. *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006). Defendant does not assert that the difference in the two constitutional standards is meaningful to the harmless error analysis in this case. Accordingly, we do not further consider the issue.

628-29 (court discerned from verdicts on other counts that jury necessarily had requisite concurrence on some counts for which omitted concurrence instructions should have been given).

This case is not wholly analogous to our prior jury concurrence cases addressing harmless error because, as noted, we have not before addressed the precise situation presented here. Our previous decisions involving motions to require an election, however, do provide some guidance. In particular, *State v. Lee*, 202 Or 592, 276 P2d 946 (1954), concerned the erroneous failure to require an election in a case involving a single count of rape of a child, where the evidence indicated two separate occurrences that transpired several months apart. 202 Or at 597. In that case, the trial court instructed the jury that it must find that the crime occurred "on or about" the latter date, the testimony focused on the latter date, and the defendant adduced alibi evidence as to the latter date. *Id.* at 598-99, 601. This court concluded that the trial court erred in denying the defendant's motion to require an election. The court further concluded, however, that the error was harmless because, as a practical matter, the parties and the court understood that the state intended to prove the latter date. *Id.* at 607-08. Such a practical focus on the context of the entire record is a useful tool in instructional error cases. *Lopez-Minjarez*, 350 Or at 578.

In a related vein, several of the contextual considerations that supported the giving of a modified concurrence instruction in *Jones* have a bearing on our harmless error analysis here. In particular, the court in *Jones* noted that "only infrequently can an alibi or identity defense be raised in resident child molester cases. Usually, the trial centers on a basic credibility issue—the victim testifies to a long series of molestations and the defendant denies that any wrongful touching occurred." 51 Cal 3d at 319. And in *Thomas*, the court concluded on facts similar to those here that the error in failing to give a concurrence instruction was harmless:

"The evidence at trial included nothing that would lead a juror to conclude that the acts of those types described by the victims occurred on some occasions testified to by the

> victim but not on others. *** The defense evidence was
> general and designed to show that none of the incidents
> occurred, rather than providing an individualized defense
> aimed at discrete alleged instances."

*Thomas*, 803 P2d at 154-55. *See also R.L.G.*, 712 So 2d at
367-68 (similarly concluding on undifferentiated evidence
from child victims that there was no possibility of juror
disagreement as to specific acts and thus no reversible
error).

In this case, the direct evidence on each charge
came almost exclusively from the complaining witness, CS,
who testified to numerous sexual encounters with defendant
that occurred over the course of several years in their home.
Her testimony was primarily nonspecific and undifferenti-
ated; although she identified some occurrences at particu-
lar locations, most of the occurrences were described only
generally, and without reference to a time frame. Additional
circumstantial evidence that supported the convictions that
was not based on CS's testimony consisted of evidence about
how defendant controlled her, statements that defendant
made about her, and sexually suggestive photos that defen-
dant took of her.

The evidence that supported defendant's theory of
the case consisted of (1) his denial that any of the sexual acts
occurred, (2) evidence that CS initially had denied any abuse
and had later provided some inconsistent details about the
abuse, and (3) evidence that CS's mother and grandmother
harbored animosity toward defendant. Nothing about defen-
dant's theory of defense concerned particular occurrences of
the sexual acts described by CS. There was no alibi defense,
nor any defense that CS had misidentified the perpetra-
tor. That is, nothing in the defense theory called into ques-
tion CS's description of any particular occurrence. Rather,
defense counsel focused on inconsistencies in CS's state-
ments and the absence of physical evidence to support the
charges. In sum, there was evidence that defendant commit-
ted multiple acts of rape, sodomy, and unlawful sexual pen-
etration against CS, but there was nothing to indicate that,
in evaluating the evidence to determine if those offenses had
been committed, the jury would have reached one conclusion

as to some of the occurrences but a different conclusion as to others.

Defendant remonstrates that the state's evidence relating to the unlawful sexual penetration charge showed that he penetrated CS not only with his finger but also with the "red rocket." To the extent that defendant is arguing the state was required to elect an occurrence on that basis or that he was entitled to a jury concurrence instruction with respect to the specific object with which he carried out the unlawful sexual penetration, neither case law nor the text of the statute supports that contention. *See* ORS 163.341 (describing crime as penetration "of the vagina, anus or penis of another with *any object* other than the penis or mouth") (emphasis added). To the extent that defendant means to argue that evidence that different objects were used for unlawful sexual penetration gave the jury a basis from which it could distinguish one separate occurrence from another, the record does not support that proposition. CS's testimony regarding the unlawful sexual penetration charge was generic enough such that no occurrences were identified where penetration occurred with one object but not the other.[16] Moreover, the indictment alleged, and the jury was instructed, that the charged act concerned unlawful sexual penetration with a finger. Thus, to the extent that

---

[16] Additionally, we reject defendant's criticism of the Court of Appeals' account of the trial court record relating to the unlawful sexual penetration count. That court noted (albeit not in a harmless error context) that the unlawful sexual penetration count "specifically identified defendant's finger as the 'object other than [his] mouth' that penetrated the victim ('to wit: his finger')." *Ashkins*, 263 Or App at 210. Defendant argues that, although the trial court initially instructed the jury as quoted, its instructions before the jury retired did not include the reference to "finger" and thus the jury was likely to have been confused. Although it is true that the final instruction on the elements of unlawful sexual penetration did not refer to defendant's "finger," defendant himself requested that instruction, UCrJi 1610, and the court gave the instruction in the exact wording proposed by defendant. Defendant also suggests that the Court of Appeals erred in stating that the prosecutor's closing statement "made clear that the object of the penetration for Count 3 was defendant's finger," noting that the "red rocket" also was mentioned. *Ashkins*, 263 Or App at 223 n 11. The prosecutor's brief mention of the "red rocket" during closing argument did not refer to a specific charge, but was made to show that CS provided consistent details in her accounts. By contrast, when the prosecutor discussed the unlawful sexual penetration charge during closing argument, he specifically stated that it concerned "digital penetration of [CS] with his finger when she was under the age of 14 years old." In short, defendant's criticism of the Court of Appeals' description of the record is not well taken.

defendant suggests that the error with respect to the unlawful sexual penetration count differs from the other counts, we reject that argument.[17]

In short, we conclude that there is little likelihood that, if it had been given the concurrence instruction that defendant requested, the jury would have reached a different result. Accordingly, we further conclude that, although the trial court erred in denying defendant's request for a jury concurrence instruction, the error was harmless.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[17] We note that there also was evidence of two different ways in which sodomy was committed, but defendant makes no similar argument with respect to the sodomy count.