Argued and submitted February 9; conviction on Count 1 reversed and
remanded, otherwise affirmed September 14, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VAUGHN RAY KIMBRELL,
*Defendant-Appellant.*

Lane County Circuit Court
201316323; A156336

383 P3d 379

Anne Fujita Munsey, Deputy Public Defender, argued the
cause for appellant. With her on the opening brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.
With her on the reply brief was Ernest G. Lannet, Chief
Defender, Criminal Appellate Section.

Timothy A. Sylwester, Assistant Attorney General, argued
the cause for respondent. With him on the brief were Ellen
F. Rosenblum, Attorney General, and Paul L. Smith, Deputy
Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge,
and DeHoog, Judge.

## SERCOMBE, P. J.

Following a jury trial, defendant was convicted of second-degree assault (Count 1).[1] ORS 163.175.[2] On appeal from the resulting judgment, defendant raises six assignments of error. We reject without discussion defendant's first and second assignments of error. Furthermore, in light of our resolution, discussed below, of defendant's fifth and sixth assignments of error, we do not address his third and fourth assignments in which he challenges testimony elicited from a police officer regarding the permissible use of force or deadly force in response to provocation. We write to address defendant's fifth and sixth assignments of error, in which he argues that the trial court erred when it refused to give two jury instructions that he had requested relating to his defense of self-defense. As explained below, we agree with defendant that the trial court erred in refusing to give those jury instructions. Accordingly, we reverse and remand for a new trial on Count 1; we affirm on Counts 2, 3, and 4.

The charges in this case arose from an altercation between defendant, a 53-year-old man, and Billick and Scott, two 21-year-old men. Defendant raised the defense of self-defense to the charges. Defendant and Billick testified at trial about the incident, and told different versions of the events of the evening in question.

According to Billick, he and Scott had been walking along the street at around 9:00 p.m. when they saw

---

[1] Defendant was acquitted on charges of attempted assault (Count 3), ORS 163.175; ORS 161.405, and unlawful use of a weapon (Counts 2 and 4), ORS 166.220.

[2] ORS 163.175 provides:

"(1) A person commits the crime of assault in the second degree if the person:

"(a) Intentionally or knowingly causes serious physical injury to another;

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.

"(2) Assault in the second degree is a Class B felony."

In this case, defendant was charged with causing physical injury by means of a dangerous weapon.

defendant nearby holding a flashlight while following a man and shouting at the man to stop. Defendant also yelled incoherently about the man beating up or raping a woman. Billick testified that, once his path intersected with defendant, he asked defendant whether defendant had called the police about his concern and, after defendant responded that he had called the police, Billick asked him whether he "should let the police handle that." Defendant cursed at Billick, who walked away. Defendant, however, began to follow Billick and Scott, and, according to Billick, was verbally aggressive toward them and called Scott a vulgar name.

Billick testified that eventually he became "fed up" with defendant following and verbally harassing him and stopped walking. Defendant walked into Billick's shoulder and Billick responded by, first, telling defendant to "kick rocks and keep stepping down the road," and, then, turning to face defendant and asking defendant what his problem was. According to Billick, defendant was very near to his face, maybe 10 inches to a foot away when Billick turned and, after Billick turned, defendant took another step in toward him. Billick then hit defendant in the head with his fist, defendant doubled over, and Billick grabbed defendant's collar and punched him a couple more times. Billick then felt an intense stinging sensation on his chest, and discovered that he had been stabbed.

Billick told Scott that defendant had stabbed him and Scott approached defendant who was holding a knife. He jumped on defendant and the two wrestled on the ground, but defendant did not drop the knife. Scott punched defendant, telling him to drop the knife. A bystander then approached them and began kicking defendant in the head while yelling at him to drop the knife. Eventually, defendant lost consciousness and the knife fell to the ground. Police arrived shortly thereafter.

Defendant, for his part, testified that, on the evening in question, he was out walking his dog near his home when he heard a woman screaming. After putting the dog back inside, defendant went to investigate what was happening. He saw a group of people, including Billick and Scott, in the area where he believed the screams had come

from. Defendant asked Billick and Scott if they had heard a woman screaming and they responded by swearing at him. According to defendant, he then walked behind Billick and Scott and asked them again whether they had heard a woman screaming. However, they again swore at him and told him to leave them alone or they would "knock [him] out." Defendant testified that he swore back at Billick and Scott and also asked a third time about a woman screaming. Billick and Scott both then stopped and turned to face defendant and, according to defendant, Scott said, "Now we're going to knock you out. We already told you we're going to knock you out. Fuck you. Leave us alone." Billick then said something in a low voice. Defendant, unable to hear what Billick said, leaned forward, asking "What?" Billick then hit defendant very hard with a "series of great punches." Defendant testified that, at the time Billick began hitting him, he had not touched Billick in any way. Scott then became involved in the fight, striking defendant in the back of the head with what defendant believed was a blunt instrument.

Defendant testified that he was afraid for his life, believing that he would be beaten to death. He was carrying a knife, which he reached to retrieve from its sheath on the back of his belt. According to defendant, there was a struggle over the knife. However, defendant did not remember stabbing Billick and, at some point, lost consciousness. As a result of the incident, defendant sustained a head injury that required seven staples, a black eye, and multiple other bruises and cuts on various areas of his body.

Rathje, the police officer who arrived at the scene, testified that defendant's knife was a "tanto-style blade," a fixed blade knife "fashioned after the traditional samurai sword." According to the officer, the knife is "designed specifically for strength, for puncturing with the tip" and slicing with "the curve of the blade." Rathje further testified that that style of knife can "puncture our body armor, quite effectively" and can "puncture a car door." In other words, a "tanto-style blade" is "designed for a knife fight" and "[s]omeone who knows what they're doing can inflict a massive amount of damage and injury in a very short amount of time with a tanto-style blade."

Billick sustained wounds to his chest and neck. The physician who treated Billick for his injuries testified that, in terms of places on the body where one could be stabbed, the place in the chest where Billick was stabbed was particularly bad because, if the knife had gone in a little deeper or at a different angle, it could have hit a lung or Billick's heart. Furthermore, according to the doctor, although Billick's neck "wound went superficial, probably hit the bone," but "[i]f it would have went under the bone, it would likely have been fatal."

Defendant requested that the jury be instructed on self defense. The court agreed that, given the evidence in the case, a self defense instruction was appropriate. It instructed the jury:

> "Defense, physical force, defense of person: The defense of self-defense has been raised. A person is justified in using physical force upon another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force. In defending, a person may only use that degree of force which he reasonably believes to be necessary. The burden of proof is on the State to prove beyond a reasonable doubt that the defense does not apply.

> "The defendant is not justified in using physical force on another person if he provoked the use of unlawful physical force by that other person with the intent to cause physical injury or death to the other person."

Defendant, however, requested that, in addition to that instruction, the court give Uniform Criminal Jury Instruction (UCrJI) 1108, which provides:

> "There are certain limitations on the use of deadly physical force. The defendant is not justified in using deadly physical force on another person unless [he/she] reasonably believed that the other person was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person."

Defendant also requested that, immediately after UCrJI 1108, the court give the following special instruction:

> "Assault is a crime involving the use or threatened imminent use of physical force against a person. Assault is

a felony when it is committed by two or more people at the same time."[3]

He asserted that those instructions were appropriate because Billick had been stabbed and the jury could "infer from that that this was deadly physical force." Defendant also argued that members of the jury were not "legal expert[s]" and would be uncertain whether assault was a felony. He contended that the requested special instruction simply defined "in very plain words and entirely consistently with the statute, and only as it relates to the circumstances that [have] been presented here, what a felony is and what a felony is that involves the use or threatened use of physical force against a person." The court refused to give those instructions to the jury and, as noted, on appeal, defendant asserts that the court erred in failing to give those instructions.

"When instructing jurors, the trial court's obligation is to state to them all matters of law necessary for their information in giving their verdict." *State v. Harryman,* 277 Or App 346, 356, 371 P3d 1213 (2016) (internal quotation marks omitted). "Generally speaking, an instruction is appropriate if it correctly states the law and is supported by evidence in the record, when the evidence is viewed in the light most favorable to the party requesting the instruction." *State v. Ashkins,* 357 Or 642, 648, 357 P3d 490 (2015); *see State v. Wolf,* 260 Or App 414, 416-17, 317 P3d 377 (2013) ("When a defendant challenges a trial court's refusal to give a requested jury instruction, we view the facts in the light most favorable to giving that instruction."). "In addition to the duty to instruct on applicable principles of law raised by the evidence, a trial court also has a duty to refrain from instructing the jury on irrelevant matters, or those that may have the effect of confusing the jury." *Harryman,* 277 Or App at 357.

Here, the state asserts that the court correctly refused to give the instructions for two reasons. First, according to the state, the instruction would have been confusing to the jury because defendant was charged with second-degree assault, which does not require proof that he

---

[3] Where a person, "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another," that person commits the felony crime of third-degree assault. ORS 163.165(1)(e).

used *deadly* physical force. Second, in the state's view, "the evidence showed only that Billick had punched defendant in the face," not that he was assisted by Scott in "committing the assault that preceded the stabbing." We are unpersuaded on both points.

First, contrary to the state's argument, it is not significant in this case that the second-degree assault charge did not require proof that defendant used deadly physical force. Defendant's theory of the case was that he had acted in self defense, and the focus of the inquiry with respect to the instruction is on the use of that defense, not on the elements of the charged crime. A person's right of self-defense is governed by ORS 161.209, which provides that a person may use physical force to defend himself "from what the person reasonably believes to be the use or imminent use of unlawful physical force." Under that statute, a "person may use the degree of force which the person reasonably believes to be necessary for that purpose." Thus, in determining whether the state has disproved a defendant's assertion that he acted in self-defense, whether the degree of force used by a defendant was necessary is part of the evaluation.

Here, there was evidence from which the jury could believe that defendant used the highest degree of force—that is, deadly force—to defend himself against Billick. Viewed in the light most favorable to the giving of the requested instruction, the evidence was that defendant used a style of knife that was "designed for a knife fight" and that could be used to "inflict a massive amount of damage and injury in a very short amount of time." Furthermore, as described by the physician who treated Billick, the injuries defendant inflicted on Billick, although superficial, "would likely have been fatal" if the knife had gone in just a little deeper or at a different angle. Because, from that evidence the jury could infer that defendant used deadly force against Billick, to fulfill its duty to inform the jury of all matters of law necessary for their information in giving their verdict, the court should have provided the requested instruction as to when the use of deadly force is permissible.

Second, the state is incorrect in its contention that the trial court correctly declined to give defendant's requested

instructions because there was no evidence that Billick was assisted by Scott in assaulting defendant before the stabbing. Again, in evaluating whether the trial court should have given a requested jury instruction, we view the evidence in the light most favorable to the giving of the instruction. *See Wolf*, 260 Or App at 416-17. In this case, defendant testified that Billick assaulted him with Scott's help before the stabbing. Specifically, defendant testified that Billick and Scott both faced him, Scott told defendant that they were going to knock him out, Billick hit defendant very hard with a "series of great punches," and Scott became involved in the assault, hitting defendant in the back of the head. It was only after those events, according to defendant's testimony, that defendant, afraid for his life, reached for his knife. Thus, viewing the evidence in the light most favorable to the giving of the requested instruction, there was evidence that both Billick and Scott participated in assaulting defendant before the stabbing occurred. In other words, contrary to the state's contention, there was evidence from which defendant could have reasonably believed that both Billick and Scott were committing or attempting to commit a felony involving the use or threatened imminent use of physical force against defendant. *See* ORS 163.165(1)(e) (defining third-degree assault, committed with the aid of another person actually present, as a felony).[4]

---

[4] The state, in a footnote in its brief, states that, even if the trial court should have given UCrJI 1108, it should not have given defendant's requested accompanying special instruction because it did not correctly state the law. We disagree. Again, defendant requested that the jury be instructed as follows:

"There are certain limitations on the use of deadly physical force. The defendant is not justified in using deadly physical force on another person unless [he/she] reasonably believed that the other person was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person.

"Assault is a crime involving the use or threatened imminent use of physical force against a person. Assault is a felony when it is committed by two or more people at the same time."

The second part of those requested instructions, the special instruction, elaborates on some of the information given in UCrJI 1108. Specifically, it tells the jury two things: (1) that the crime of assault is within the category of crimes that involve "the use or threatened imminent use of physical force against a person" referred to in UCrJI 1108, and (2) that the crime of assault is a felony, as required under UCrJI 1108, in circumstances when it is committed by two people together. That clarification of UCrJI 1108, specific to the circumstances presented in this case, was a correct statement of the law.

Finally, the state contends that we should not reverse defendant's conviction because "defendant could not possibly have been prejudiced by the trial court's decision not to give" the requested instructions because they "would have provided an *additional limitation* on his right to use self-defense." (Emphasis in original.) *See State v. Downing*, 276 Or App 68, 86, 366 P3d 1171 (2016) (Court of Appeals will reverse a criminal conviction based on instructional error only where a defendant was prejudiced). Again, we disagree.

First, the instruction, though phrased in the form of a limitation, also informed the jury under what circumstances the use of deadly force is permissible. And the circumstances under which the instruction explains that deadly force is permissible are consistent with defendant's testimony regarding the events leading to the stabbing in this case.

Furthermore, the state took the position that defendant had used deadly force against Billick, and that the use of that force was not permissible under the circumstances. The state suggested, in its examination of witnesses, that defendant could have killed Billick with the knife and suggested that the fight had been "elevated to a lethal fight." It also argued to the jury in closing that the case boiled down to "the reasonableness of the defendant's decision to pull a tanto-style close-quarters combat knife out and slash the victim" and emphasized that Billick had been unreasonably "sliced open by the defendant." Under the circumstances, "we cannot conclude that the trial court's failure to give defendant's requested instruction did not affect the result." *State v. Zolotoff*, 354 Or 711, 720, 320 P3d 561 (2014). Accordingly, the trial court's error requires reversal.

Conviction on Count 1 reversed and remanded; otherwise affirmed.