Submitted on record and briefs October 6, 2006, affirmed March 14, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RUBEN LARA GARCIA,
aka Ruben Garcia-Lara,
*Defendant-Appellant.*

Multnomah County Circuit Court
021136717; A122222

154 P3d 730

Timothy M. Bowman filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Hargreaves, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for multiple sex offenses involving two child victims. He argues that, under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), the trial court erred in failing to instruct the jury that a guilty verdict on a particular charge requires 10 or more jurors to agree on the occurrence of a specific factual incident supporting that charge. Defendant concedes that he failed to make that argument below but argues that, under *Boots* and its progeny, the court's failure to deliver the instruction or to take other steps to ensure the requisite level of jury concurrence constitutes plain error. The state responds that the trial court did not err because, given the nature of the evidence adduced at trial, there was no possibility that the jurors failed to agree on the material elements of the offenses for which defendant was convicted. In any event, the state argues, it is not obvious that the trial court was required to do more than it did, and thus the assignment is not reviewable as plain error. We agree with the state that there is no plain error and affirm.

The relevant facts are not in dispute. From 1995 to 2000, defendant lived with his then-girlfriend, R, and R's three children, one of whom was R's daughter Y. In 2002, when Y was 13 years old, she reported that defendant had sexually abused her repeatedly over the years during which he had lived with the family. Following a police investigation, the state charged defendant by indictment with 48 sex offenses involving Y, as well as three charges related to Y's cousin, J. The charges involving J are not at issue in this appeal.

With respect to the charges involving Y, the indictment alleged two counts of rape, six counts of sodomy, 10 counts of unlawful sexual penetration, and 30 counts of first-degree sexual abuse. As set forth in the indictment, each of the counts consists of a generic allegation that defendant committed the respective offense at some point when he lived with Y's family. Thus, each of the counts charged that the respective offense took place "on or between April 01, 1995 and January 30, 2000," reflecting the period during which defendant lived with Y's family and that Y was under the age

of 12 at the time. The two counts alleging rape are identically worded, as are the 10 counts of unlawful penetration; the six counts of sodomy may be broken down into three identical counts alleging that defendant caused his penis to come into contact with Y's mouth and three counts alleging that defendant caused his mouth to come into contact with Y's vagina. Similarly, the 30 counts of sexual abuse comprise three sets differentiated only to the extent that they involve different body parts: 10 counts alleging that defendant touched Y's breasts, 10 counts alleging that defendant touched her vagina, and 10 counts alleging that he caused Y to touch his penis.

At trial, Y testified that defendant abused her frequently over the four and one-half years that he lived with the family. She testified that the abuse took place both when the family lived in an apartment and after they had moved into her grandmother's home. In her testimony, Y did not relate detailed accounts of specific occasions of abuse. Instead, in response to the prosecutor's questions, she attempted to estimate the number of times defendant had touched a particular part of her body, and where in the home in which they were living the abuse took place, as the following exchange exemplifies:

"Q. During the time you lived in the apartments, do you know how many times he touched your breasts when you were in the living room?

"A. No

"Q. Was it more than once?

"A. Yes.

"Q. Was it more than five times?

"A. I think so.

"Q. As many as 10?

"A. Yeah.

"Q. As many as 20?

"A. No.

"Q. So somewhere between 10 and 20?

"A. Uh-hum."

All of Y's testimony regarding defendant's abuse was offered in approximately the same manner—that is, with estimates of the number of times that a particular offense took place and in what room it happened: Y testified that, in her mother's room, defendant had touched his penis to her vagina "more than five times," touched his mouth to her vagina "around five times," and caused her to touch his penis with her mouth "about ten times." She testified that defendant had touched her breasts "about ten times" in her mother's room, five to 10 times in the hallway of their apartment, and 10 to 20 times in the living room of their apartment. She testified that defendant touched her vagina about five times in the living room, more than 10 times in her mother's room, and about five times in the hallway of the apartment. Asked whether he touched the "inside" or the "outside" of her vagina, Y testified that she didn't know, but the jury also saw a videotape of Y's interview with a CARES examiner in which Y said that defendant had touched the inside part of her vagina. Her testimony regarding the instances in which defendant caused her to touch his penis also consisted of estimates of the number of times that it had happened in various rooms. Defendant testified that he never had any inappropriate sexual contact with Y.

After the close of evidence, defendant moved for a judgment of acquittal. The trial court granted the motion with respect to nine counts of unlawful penetration, explaining that the evidence adduced at trial could only support an inference that defendant had committed the crime on a single occasion, but denied the motion with respect to the remaining counts. The jury found defendant guilty on all of those counts.

■      On appeal, defendant assigns error to the trial court's failure to require the state to elect the specific charges that it intended to prove and to the court's failure to instruct the jurors that they had to agree on a specific incident that formed the basis for each conviction. With respect to both of those assignments, defendant makes a single argument, namely, that, under *Boots*, the trial court's actions were erroneous because they allowed the jury to convict defendant without necessarily agreeing on the specific incident that formed the basis of conviction with respect to each count. Defendant concedes that he did not preserve that argument,

but argues that it is error apparent on the face of the record and asks that we exercise our discretion to correct it.

The state responds that the trial court's failure to deliver a concurrence instruction was not plainly erroneous. The state argues that, given the general nature of the evidence presented, there was no danger that the jurors might disagree about different underlying "incidents," and under those circumstances the court was not required to deliver a concurrence instruction. In any event, the state argues, whether the court was required to do more than it did to ensure concurrence is not obvious and therefore defendant's unpreserved argument is not reviewable. We agree with the state that the failure to deliver a concurrence instruction was not plainly erroneous.

We may review an unpreserved claim of error only if it is an error of law, appears on the face of the record, and is "obvious, not reasonably in dispute." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).

Article I, section 11, of the Oregon Constitution requires that, for crimes other than first-degree murder, at least 10 jurors must agree on the factual occurrences that constitute the crime in order to render a guilty verdict. *State v. Rodriguez-Castillo*, 210 Or App 479, 497, 151 P3d 931 (2007). As a result, when the state has presented evidence of multiple specific incidents that could support a charge against a defendant, it is error for the court not to instruct the jury on "the necessity of agreement on all material elements of a charge in order to convict," *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). The required instruction is often referred to as a concurrence or *"Boots"* instruction. *See Boots*, 308 Or at 376-77 (explaining the concurrence requirement).

A *Boots* instruction, however, is only needed to address the possibility of juror disagreement with respect to the *material* elements of a particular charge, *Lotches*, 331 Or at 472, and, at least for purposes of plain error review, it is not "obvious" that the location in which a sexual offense took place constitutes such a material element. In that regard, *State v. Sparks*, 336 Or 298, 83 P3d 304, *cert den*, 543 US 893 (2004), is instructive. *Sparks* was an aggravated murder trial

in which the state had presented evidence that the underlying crimes—kidnapping and rape—might have occurred in either of two locations. On automatic and direct review, the defendant argued that the trial court had plainly erred in failing to give a *Boots* instruction, because the state's evidence allowed for potential disagreement among the jurors about the location of the underlying crimes. The Supreme Court rejected the defendant's argument that the lack of a *Boots* instruction constituted plain error. The court reasoned that it was not "obvious" that the jurors' failure to agree on the location of the underlying crimes would violate the jury concurrence rule, because it was not obvious that the location of those offenses was a material element. Instead, the court reasoned, the location more logically constituted the kind of " 'factual detail' " that, under *Boots*, does not require unanimity. *Sparks*, 336 Or at 317 (quoting *Boots*, 308 Or at 379); *see also State v. Rodriguez-Castillo*, 210 Or App at 498.

■    In addition, a *Boots* instruction is required only when there is a real possibility of juror confusion with respect to the evidence as it relates to each charge. When the state's evidence is so general that it simply is not possible that the jurors might have disagreed about specific instances underlying the various charges—because they were not given evidence of specific instances on which they might disagree—it is not error for the court to fail to give a *Boots* instruction.

*State v. Pervish*, 202 Or App 442, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006), illustrates the point. That case involved a defendant charged with multiple counts of promoting prostitution. One of the counts charged that the defendant promoted prostitution involving a woman named Walford. In support of that charge, Walford testified that the defendant promoted the commission of numerous acts of prostitution over an extended period of time, but that she could not distinctly remember any of them. On appeal, the defendant argued that the court committed plain error in failing to deliver a *Boots* instruction. With respect to the count involving Walford, we rejected the argument that a concurrence instruction was necessary, explaining that the very generality of the evidence obviated the need for such an instruction:

"[T]he rationale for the concurrence requirement is not implicated in these circumstances. The very generality of the evidence pertaining to [the charge of promoting prostitution] ameliorated any risk that members of the jury could have picked different factual incidents in convicting defendant of that charge."

*Id.* at 462.

Considering the facts of this case in light of *Pervish* and *Sparks*, we conclude that the trial court's failure to give a concurrence instruction or take other steps to ensure jury unanimity was not plain error. The victim testified in very general terms about the approximate number of times the abuse took place, in various rooms in the house over the course of more than four years, and the jury convicted defendant on every count that came before it. We are unable to discern any plausible reason why a juror might have credited the victim's generalized testimony with respect to one incident or location versus another; nor does defendant suggest any such basis. Under *Pervish*, the generality of the state's evidence "ameliorated any risk that members of the jury could have picked different factual incidents in convicting defendant of that charge." *Id.* at 462. Furthermore, even assuming that some of the jurors believed that defendant committed the abuse at one place, while others believed it happened at a different location, it was not plainly erroneous for the court to fail to give a concurrence instruction because it is not obvious that the room in which the sexual abuse took place constitutes a material element. *Sparks*, 336 Or at 317. It follows that the trial court's failure to deliver a *Boots* instruction or to take other steps to ensure concurrence is not reviewable as plain error.

Defendant advances other arguments, which we reject without discussion.

Affirmed.