Argued and submitted April 25, 2019; convictions on Counts 1 and 6 reversed and remanded, remanded for resentencing, otherwise affirmed February 3, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSE RAFAEL ARELLANO-SANCHEZ,
*Defendant-Appellant.*

### Washington County Circuit Court
### 16CR70262; A165375

481 P3d 349

Defendant appeals from a judgment of conviction for one count each of first-degree robbery, ORS 164.415 (Count 1); second-degree assault, ORS 163.175 (Count 2); fourth-degree assault, ORS 163.160 (Count 3); unlawful use of a weapon, ORS 166.220 (Count 6); menacing, ORS 163.190 (Count 7); first-degree burglary, ORS 164.255 (Count 8); attempted first-degree arson, ORS 164.325 (Count 10); and second-degree criminal mischief, ORS 164.354 (Count 11). Raising four assignment of error, defendant first asserts that the trial court erred in denying his motion to exclude gang-related evidence. The state concedes defendant's second assignment in which he contends that the trial court erred in reconstituting defendant's criminal history score. In defendant's combined third and fourth assignments of error, he contends that the trial court erred in failing to provide a jury concurrence instruction on Counts 2 and 3. Defendant also raises three supplemental assignments of error challenging nonunanimous verdicts for Counts 1 and 6 under *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020). The state concedes that error. *Held*: Defendant's first assignment of error was rejected without discussion and the Court of Appeals accepted the state's concession to the second assignment of error. Regarding defendant's third and fourth assignments of error, under *State v. Teagues*, 281 Or App 182, 383 P3d 320 (2016), concurrence instructions are necessitated when single incidents give rise to separate and distinct injuries, but not when a single incident results in a "cluster of injuries," as occurred here.

Convictions on Counts 1 and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

Janelle F. Wipper, Judge.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

JAMES, J.

Convictions on Counts 1 and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.

**JAMES, J.**

Defendant appeals from a judgment of conviction for one count each of first-degree robbery, ORS 164.415 (Count 1); second-degree assault, ORS 163.175 (Count 2); fourth-degree assault, ORS 163.160 (Count 3); unlawful use of a weapon, ORS 166.220 (Count 6); menacing, ORS 163.190 (Count 7); first-degree burglary, ORS 164.255 (Count 8); attempted first-degree arson, ORS 164.325 (Count 10); and second-degree criminal mischief, ORS 164.354 (Count 11).[1] On appeal, defendant raises four assignments of error and three supplemental assignments of error.

Defendant's supplemental assignments raise non-unanimous jury challenges. The trial court instructed the jury, "[t]his being a criminal case, 10 or more jurors must agree on your verdict." Defendant did not object to that instruction or request a unanimous jury instruction. The jury returned an 11-to-1 verdict on Count 1 and a 10-to-2 verdict on Count 6. The remaining counts were unanimous. Defendant did not object to the court's receipt of the nonunanimous verdicts on Counts 1 and 6. In his second and third supplemental assignments of error defendant raises a plain error challenge to the receipt of nonunanimous verdicts on Counts 1 and 6. The state concedes the error. We accept the concession, and we exercise our discretion to reverse and remand on Counts 1 and 6. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020); *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020) ("[D]efendant has a significant interest in a new trial before a jury properly instructed that it must be unanimous to convict. And, though the state has a competing interest in avoiding the expense and difficulty associated with a retrial, the balance weighs in defendant's favor.").

In defendant's first supplemental assignment of error, he challenges the trial court's giving of a nonunanimous

---

[1] Although the state also charged defendant with an additional count each of unlawful use of a weapon, ORS 166.220 (Count 4), and menacing, ORS 163.190 (Count 5), the trial court granted the state's motion to dismiss those charges. Additionally, the trial court merged the verdicts on Count 8 and Count 9, which were both charges for first-degree burglary, ORS 164.255, and entered a single burglary conviction on Count 8.

jury instruction as reversable error even as to those counts on which the jury returned a unanimous verdict. Defendant's argument is foreclosed by *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) ("[T]he trial court's instruction to the jury that it could return a nonunanimous verdict did not amount to a structural error and was harmless beyond a reasonable doubt.").

Turning to the assignments of error raised in defendant's opening brief, we reject the first without discussion. Regarding defendant's second assignment of error, although we are already reversing the conviction by nonunanimous verdict on Count 6, pursuant to *Ramos*, because the issue could arise on remand, we note that the parties on appeal agree that the trial court erred in reconstituting defendant's criminal history score, as to Count 6.

As to defendant's combined assignments of error three and four, defendant asserts that the trial court erred in denying his request for jury concurrence instructions on Count 2, second-degree assault, and Count 3, fourth-degree assault. The state concedes that defendant properly preserved a request for a concurrence instruction as to Count 2. Defendant acknowledges that his request for a jury concurrence instruction for Count 3 is unpreserved and urges this court to, nonetheless, review for plain error. As we will explain, a concurrence instruction was not required for either assault charge in this case.

The pertinent facts are undisputed. R met defendant when defendant showed up at R's house drunk and said that he had no place to live. R was living with his wife, their five children, and one grandchild, but he had an extra bedroom at his onsite autobody shop. Defendant agreed to keep the shop clean in exchange for housing and living necessities. Defendant lived and worked there for a few months, but R asked defendant to leave after he had attacked two other people at the shop, chased a person with an axe, and destroyed customers' car batteries.

About a week after R asked defendant to leave, R awoke to find pink-painted graffiti defendant painted on the side of R's house and fence that read "12th Street," "payback," and "RIP Junie," which was R's nickname. On the

back door of his house, R also saw a cross, other symbols, and the number "777," which he had previously caught defendant tagging using the same paint color. Shortly thereafter, R, his wife, and their eight-year-old daughter left home to get paint removal supplies and to drop the daughter off at school, but she forgot her backpack, so they turned around and went home.

When they arrived home, R saw the front door open and defendant inside. Defendant came out of the house with R's property in his hands, including high-valued items from underneath R's bed. R confronted defendant. Defendant dropped the items he was carrying, charged at R, and pulled out a knife with a four- or five-inch blade. R ran around the car and told his wife to drive away. R testified that he intended to kill defendant.

Defendant moved toward the daughter's side of the vehicle, and R's wife tried to keep the daughter's car door closed. R's wife got out of the car and defendant turned toward her, holding the knife over his head with the blade pointing downward. She pushed defendant away, got back in the car, and closed the door.

Defendant ran at R again. R ran toward the fence, where he had some lumber that he was going to use as a weapon, but defendant was too close. Defendant cut R's head. R threw defendant through the fence. They fell together, and R landed on top of defendant. R hit his head on the fence post and was dazed from the impact. Defendant swung the knife at R 10 or 11 times, maybe more, and said that he was going to kill R. R punched defendant a few times. Eventually, R flipped defendant over, put him in a chokehold, and held him down. Defendant freed his hand. R pushed the knife blade toward defendant; R thought defendant was cut in the process. R and defendant struggled to gain control of the knife, cutting R's finger and hand. R told defendant to let go of the knife. Defendant responded, again, that he was going to kill R. R punched defendant a few more times, defendant let go of the knife, and R threw it away.

The entire encounter lasted about five minutes until police arrived. A passerby and a neighbor's security camera recorded videos of parts of the incident. After the police

arrived, R went inside the house and saw that his daughter's room and the living room were destroyed. R smelled and saw gasoline. Gas was all over his daughter's bed, the living room couch, and the floor. Couch cushions were overturned, and electronics were on the floor. The bathroom window was open, and the screen was cut. The repairs were valued at $12,000 to $13,000.

Washington County Sheriff's Deputy James Berning arrived on the scene and tried to interview R, but R could not focus because he was so upset. Berning also interviewed R's wife, who was in a daze or in shock. They left the house when fire personnel told them it was dangerous to be inside because of the gasoline fumes.

Defendant was taken into custody and given treatment for a cut on his left shoulder. Police found a picture of R's daughter with defendant's belongings and pink paint underneath his fingernails. A forensic analysis of defendant's clothing revealed the presence of ignitable liquid in the "gasoline class" on each item, at levels consistent with spillage on the clothing rather than vaporous contact. An accelerant detection dog alerted to a lighter and a pair of rubber gloves marked with pink paint matching the graffiti on the house. Officers also located a Smith & Wesson knife under R's vehicle in the driveway. R found defendant's backpack in R's Cadillac that was parked at his autobody shop. It contained ropes, duct tape, zip ties, and other items. Officers also found a can of pink spray paint by the backpack and a sheath, matching the Smith & Wesson knife, on the driver's side floorboard. While awaiting trial, defendant also drew similar graffiti symbols on the wall of his jail cell.

R suffered numerous cuts and lacerations, some on his head and hands. Both of the tendons in R's middle finger were severed and he suffered nerve damage. At the time of trial, he had undergone two surgeries to repair his finger. He could not engage in work the same way due to the injury. He required staples, stitches, or glue to close the wounds on his head.

At trial, after the close of the state's case, defendant argued that, as to Count 2 (second-degree assault), the state's evidence included a series of injuries to R and

that either the court should require the state to elect which injury it was proceeding on as the basis for Count 2, or that the court should give a jury concurrence instruction directing the jury that it must agree, under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), on which factual occurrence was the basis for each of the charges against him.

The state responded that it was too early to require an election and that the proper time for election is at the close of all evidence. Because defendant had not yet presented his case and had not yet elected whether to testify, the factual record could substantially change, which could, in turn, cause the state to alter its election if made prematurely. Defendant agreed to raise his argument again at the close of the evidence and to make his motion for judgment of acquittal at that time.

After defendant rested its case, defendant returned to his argument that the court should give a concurrence instruction or require an election for both Counts 1 and 2. The state made its election pertaining to Count 1. Regarding Count 2, the parties disputed whether an election or a jury concurrence, or neither, was required, both citing *State v. Teagues*, 281 Or App 182, 383 P3d 320 (2016). As the state argued:

"[PROSECUTOR]:   That's when an election is required or a *Boots* concurrence instruction's required. But the Court of Appeals specifically holds that when it is based on a single continuous course of conduct resulting in a single or a cluster of injuries that that does not require an election or a *Boots* concurrence instruction."

The court agreed with the state:

"THE COURT:   The way the Court looks at it is it—there are separate injuries, but it was all in the course of trying to get the knife away from the defendant and so it's all one continuous act. And so there does not need to be an election or concurrence instruction, so one isn't going to be given."

During the state's closing arguments, the state repeated the facts on the record that could lead the jury to convict defendant on the assault charges:

"The defendant decided to go after [R's wife] with that dangerous weapon to place her in fear of imminent serious physical injury. At that point in time [R's wife] is able to draw the defendant's attention back to him.

"And that's when the Assault in the Second Degree and the Assault in the Fourth Degree occur. The defendant turns his attention towards [R] using the knife, causes injury to [R]. That physical injury is also in the immediate presence of and witnessed by [R's daughter], the eight-year child who is in the vehicle.

"And so, again, one course of conduct resulting in two separate crimes, Assault in the Second Degree based on the use of a dangerous weapon and Assault in the Fourth Degree for causing physical injury in the presence of a minor child. For those reasons, I ask that you find the defendant guilty of all counts, thank you."

The trial court instructed the jury that 10 or more of them must agree on the verdict, but it did not instruct the jurors that they had to agree on the occurrence that constituted the second-degree assault. This appeal followed.

We review the trial court's failure to give a requested instruction for legal error. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). "Legal error occurs when the court refuses to give an instruction that correctly states the law *** and is supported by evidence in the record viewed in the light most favorable to establishment of the facts necessary to require the instruction." *State v. Branch*, 208 Or App 286, 288, 144 P3d 1010 (2006) (internal citations omitted).

The right to jury concurrence arises from Article I, section 11, of the Oregon Constitution. *State v. Ashkins*, 357 Or 642, 649, 357 P3d 490 (2015). We recently highlighted in *State v. Payne*, 298 Or App 411, 413, 447 P3d 515 (2019), that in Oregon criminal trials, jury concurrence is necessitated in two situations:

"'One situation occurs when a statute defines one crime but specifies alternative ways in which that crime can be committed.' *State v. Pipkin*, 354 Or 513, 516, 316 P3d 255 (2013). The other situation occurs 'when the indictment charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime.' *Id.* at 517. In that second scenario, decisions by this

court, as well as the Oregon Supreme Court, have indicated that a party can address the issue either by requesting a jury concurrence instruction, or alternatively, 'can ask the state to elect the occurrence on which it wishes to proceed and, in that way, limit the jury's consideration to a single occurrence.' *Id.*"

(Emphasis omitted.)

When a party files a motion for concurrence election and jury instruction, that party has made a request to charge the jury. *Id.* at 525. "It has been clear in Oregon, at least since [*Boots*, 308 Or 371], that a jury must be instructed concerning the necessity of agreement on all material elements of a charge to convict." *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). Under *Boots*, when the state presents evidence of multiple factual occurrences which could each independently support a guilty verdict on a single charge, it is error for the court not to instruct the jury on "the necessity of agreement on all material elements of a charge in order to convict." *Lotches*, 331 Or at 455; *State v. Basargin*, 213 Or App 515, 519, 162 P3d 325 (2007). That concurrence instruction is required "when there is a real possibility of juror confusion with respect to the evidence as it relates to each charge." *State v. Garcia*, 211 Or App 290, 296, 154 P3d 730, *rev den*, 343 Or 160 (2007).

The state's argument, both before the trial court and on appeal, is that no concurrence instruction is required "when the state relies on a single course of conduct to prove the elements of the offense." In support, the state relies primarily on *State v. White*, 115 Or App 104, 107, 838 P2d 605 (1992) (menacing), *State v. Greeley*, 220 Or App 19, 184 P3d 1191 (2008) (reckless driving), and *Teagues*, 281 Or App at 193. We address each in turn.

In *White*, we considered the need for concurrence instruction in the context of a prosecution of menacing. We held that

"no one act must be proven to support a conviction for menacing under ORS 163.190(1):

"'A person commits the crime of menacing if by word or conduct the person intentionally attempts to place

> another person in fear of imminent serious physical injury.'

> "The statute requires only that defendant acted by 'word or conduct' *and* intentionally attempted to place [the victim] in fear of imminent serious physical injury. The gravamen of the crime is the intentional attempt to place another person in fear. Defendant could have done several different acts and, if he intended thereby to attempt to place Keeney in fear, would have committed menacing."

115 Or App at 107 (emphasis in original).

In *Greeley*, we considered the need for a concurrence instruction in the context of a prosecution for reckless driving. We first reiterated that "it is not 'factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand' that the jury must agree on, but the 'facts that the law (or the indictment) has made essential to a crime.'" *Greeley*, 220 Or App at 23 (quoting *Boots*, 308 Or at 379). There, the crime in question was defined by ORS 811.140(1), which provides:

> "A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property."

And in that case, the charging instrument alleged:

> "The defendant, on or about June 21, 2005, in Jefferson County, Oregon, did unlawfully and recklessly drive a vehicle upon a public highway, to-wit: Highway 97 in a manner that endangered the safety of persons or property; contrary to statute and against the peace and dignity of the State of Oregon."

*Greeley*, 220 Or App at 22.

We concluded that, in light of the gravamen of reckless driving, and how the charge was framed in the specific case, a concurrence instruction was not required:

> "Violation of the reckless driving statute requires that a defendant have 'recklessly drive[n] a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property.' ORS

811.140. Defendant could have committed several acts that, alternatively, constituted evidence of a single element—recklessness—in an episode of driving that lasted no more than four minutes. As in *White*, the state was entitled to rely on the entire course of defendant's driving to establish the element of recklessness."

*Id.* at 25-26 (brackets in *Greeley*).

Finally, in *Teagues*, we considered the applicability of *White* and *Green* to the context of assault. There, "the state charged defendant with fourth-degree assault, among other crimes. At trial, the state contended that the jury could convict defendant of the assault based either on evidence that defendant had caused the alleged victim to scrape her knee or on evidence that he had choked her." *Teagues*, 281 Or App at 183.

Again, we began with the statute at issue,

"ORS 163.160(1)(a), which provides that a person commits fourth-degree assault if the person '[i]ntentionally, knowingly, or recklessly causes physical injury to another[.]' As defined by ORS 163.160(1), fourth-degree assault has three elements: (1) a culpable mental state, (2) causation, and (3) physical injury. Here, the state alleged that defendant 'did unlawfully and knowingly cause physical injury to [the victim].' 'Physical injury' means 'impairment of physical condition or substantial pain.' ORS 161.015(7)."

*Id.* at 188.

We noted that "the count at issue charged defendant with a single crime, but the state presented evidence of multiple, separate occurrences of that crime." *Id.* at 191. "Those theories were based on evidence of two different actions, which occurred at different times and in different locations and resulted in different injuries." *Id.* In particular, we distinguished the facts in *Teagues* from other potential assault prosecutions, noting, "[t]he state did not rely on one course of conduct establishing a single injury or a cluster of injuries; rather, it relied on two distinct instances of conduct by defendant, causing two distinct injuries." *Id.* at 193.

Focusing on the gravamen of assault, we considered what the jury was asked to determine in such a case:

"To determine whether the evidence of the first occurrence supported a guilty verdict on the assault count, the jury would have had to determine whether defendant actually caused [the victim] to fall and, if so, whether the injury to her knee constituted a physical injury for the purposes of the assault statute, that is, whether it impaired [the victim's] physical condition or caused her substantial pain. But, to determine whether the evidence of the second occurrence supported a guilty verdict, the jury would have had to determine whether defendant actually choked [the victim] and, if so, whether, in doing so, he impaired her physical condition or caused her substantial pain. The factual issues relate to the elements of the charged assault."

*Id.* at 191-92.

We concluded that "the gravamen of the fourth-degree assault charge was the unlawful and knowing causation of physical injury." *Id*. at 193. There, the state relied on "two distinct instances of conduct by defendant, causing two distinct injuries." *Id*. Accordingly, we held that a concurrence instruction was required.

Applying those principles here, we begin with the charging instrument. The state charged defendant with assault in the second degree (Count 2), and assault in the fourth degree (Count 3). The indictment alleged:

"COUNT 2:   As a separate act and transaction but as part of crimes that are of the same or similar character and a common scheme and plan as Count 1: The defendant, on or about November 3, 2016, in Washington County, Oregon, did unlawfully and knowingly cause physical Injury to [R] by means of a dangerous weapon, to wit: a knife.

"COUNT 3:   As part of the same act and transaction and part of crimes that are of the same or similar character and a common scheme and plan as Count 2: The defendant, on or about November 3, 2016, in Washington County, Oregon, did unlawfully and knowingly cause physical injury to [R], and the assault was committed in the immediate presence of or witnessed by the minor child of the above named victim, the minor stepchild of the above named victim or a minor child residing within the residence of the victim."

Assault in the second degree is defined by ORS 163.175(1):

"A person commits the crime of assault in the second degree if the person:

"(a)   Intentionally or knowingly causes serious physical injury to another;

"(b)   Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c)   Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life."

As charged in this case, assault in the fourth degree is defined by ORS 163.160(1) and (3):

"(1)   A person commits the crime of assault in the fourth degree if the person:

"(a)   Intentionally, knowingly or recklessly causes physical injury to another;

"(b)   With criminal negligence causes physical injury to another by means of a deadly weapon * * *

"* * * * *

"(3)(a)   The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim."

For both statutes, the state may establish the "physical injury" element by proving either "impairment of physical condition or substantial pain." ORS 161.015(7).

On appeal, defendant points to three separate injuries which, he contends, could satisfy the material elements of assault: (1) defendant's initial cut to R's head; (2) R hitting his head on the fence post; and (3) defendant's second cut to R's hand and finger. Defendant asserts that, although the timeline of these injuries was compressed and occurred in one location, under *Teagues*, "[b]ecause the two occurrences were temporally and spatially distinct and involved different injuries, they gave rise to different factual questions for the jury to resolve in order to determine whether the state had proven the elements of assault." *Teagues*, 281 Or App at 194. The state contends that each of the injuries took place

during a single course of conduct, and evidence the type of "cluster of injuries" foreshadowed in *Teagues*. We agree with the state.

The gravamen of both assault charges in this case is the unlawful and knowing causation of physical injury. But here, the state is not relying upon multiple distinct instances of conduct by defendant, or multiple distinct injuries. There is no dispute among the parties that a single altercation occurred between R and defendant, that it involved a knife, that it was of a brief duration and unbroken by any lapse of combat, that it involved numerous cuts and slashes, and that it resulted in injury to R. The conduct involved here is uniform in character and continuous, not conduct that is "temporally and spatially distinct." *Mellerio v. Nooth*, 379 Or App 419, 425, 379 P3d 560 (2016), *rev den*, 361 Or 803 (2017).

A single incident of fisticuffs, involving three jabs to the head, generally does not require a concurrence instruction as to which specific one of the three blows was the assaultive conduct. If a defendant shoots a victim with three bullets in succession, a jury concurrence instruction is generally not required as to which specific bullet was the assaultive conduct. As we have explained in the context of domestic assault, concurrence instructions are necessitated when "factual questions would arise should the jury consider *separate incidents* of choking, pushing, and grabbing." *State v. Theriault*, 300 Or App 243, 253, 452 P3d 1051 (2019) (emphasis added). We have never held a concurrence instruction required in the context of a single instance of choking or pushing, requiring the jury to concur on which exact shove in the single encounter constituted the assaultive conduct.

Concurrence instructions are necessitated when single incidents give rise to separate and distinct injuries, but not when a single incident results in a "cluster of injuries." *Teagues*, 281 Or App at 193. Here, the injuries, all sustained during the single encounter, are all slashing injuries—knife wounds—and are not "distinct with respect to form and causation." *Theriault*, 300 Or App at 253. Multiple slashing wounds from a single unbroken and continuous knife attack is precisely the "cluster of injuries" meant in *Teagues*.

The *Boots* requirement of jury unanimity is triggered when the essential facts required to establish an offense are conceptually distinct or when a jury would face characterization differences in deciding between them. That unanimity requirement means that a jury must agree on more than just a defendant's guilt. It also must agree on "just what a defendant did." *State v. Rolfe*, 304 Or App 461, 465, 468 P3d 503 (2020) (quoting *Boots*, 308 Or at 380-81). "The unanimity rule requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *Boots*, 308 Or at 380-81 (citing *United States v. Gipson*, 553 F2d 453, 457-58 (5th Cir 1977)); *see also State v. Lotches*, 331 Or at 468-69 ("[T]he unanimity rule requires that the jury agree as to 'just what defendant did' to bring himself within the purview of the particular subsection of the aggravated murder statute under which he was charged." (Quoting *Boots*, 308 Or at 380-81.)).

Here, based on this record, we do not perceive that the jury would be confused, or in potential disagreement, as to what defendant did. Again, there is no real dispute that defendant and R engaged in a continuous, unbroken, and brief combat involving a knife, and in that encounter R suffered a cluster of wounds—multiple cuts and slashing wounds from the blade. On this record, no concurrence instruction was required.

Convictions on Counts 1 and 6 reversed and remanded; remanded for resentencing; otherwise affirmed.