Argued and submitted November 12, 2020; affirmed July 8; on appellant's petition for reconsideration filed October 26, reconsideration allowed by opinion December 8, 2021
See 316 Or App 278, ___ P3d ___ (2021)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# VICTORIA LOIS CAMPHOUSE,
*Defendant-Appellant.*

Linn County Circuit Court
17CR26451; A170081

491 P3d 94

Defendant was convicted of two counts of criminal mistreatment in the first degree, ORS 163.205—one for each of two victims, O and D. She appeals, arguing that the trial court committed plain error by not providing the jury a concurrence instruction when the record contained evidence of multiple incidents that the jury could have determined constituted the violation on each count. The state admits that the trial court likely committed plain error but argues that the Court of Appeals should not exercise its discretion to correct the error because it is unlikely to have affected the verdict. *Held*: The trial court erred in failing to give a concurrence instruction on the count involving O because there was evidence of multiple incidents which the jury could have determined constituted the charged offense. However, the error was harmless because the parties treated the abuse as one continuing course of conduct and, if there was any confusion, there was evidence of one incident that all twelve jurors necessarily would have agreed on. The trial court did not err in failing to give a concurrence instruction on the count involving D because there was evidence of only a single incident that jurors could have determined violated the statute.

Affirmed.

DeAnn L. Novotny, Judge.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for two counts of criminal mistreatment in the first degree, ORS 163.205. She argues that the trial court committed plain error by not providing the jury a concurrence instruction when the record contained evidence of multiple incidents that the jury could have relied on in determining that defendant violated the statute on each count.[1] We agree that the trial court erred in failing to provide the jury a concurrence instruction as to one of the counts. Because that error was harmless, however, we affirm defendant's convictions.

## I.   FACTUAL BACKGROUND

The facts are largely undisputed. Defendant served as the Medicaid-approved caretaker for her elderly, disabled mother, D, with whom she shared a house on a large piece of rural property. Defendant rented the house from O, an elderly woman who lived in a separate residence on the same property. In 2013, defendant became O's caretaker as well, in exchange for reduced rent on the house.

Sometime in 2014, defendant put up a gate at the end of the driveway to prevent the goats that lived on the property from escaping, which she secured with several locks. Over the next few years, various paramedics, sheriff's deputies, and Adult Protective Services (APS) workers were called to the property to check in on O and D. Each time, the responders encountered issues with the front gate being locked and would either have to get defendant's attention to come down and let them in, cut the locks, or climb over the gate. When responders did manage to get to O's and D's homes, they consistently reported that the doors and windows were locked, nailed shut, or barricaded with furniture. Inside, the homes were unsanitary, cluttered, and full of tripping and fire hazards.

When responders made contact with O and D, they observed that both were experiencing significant cognitive

---

[1] Defendant also argues that the trial court committed plain error by failing to instruct the jury that unanimous agreement of the jurors is required to return a guilty verdict. We reject that argument for the reasons expressed in *State v. Dilallo*, 367 Or 340, 349, 478 P3d 509 (2020).

impairment. O did not know the answers to simple questions like where the phone was, where the bathroom was, or whether she had a family. Similarly, D was unable to remember defendant's phone number in case there was an emergency and seemed surprised to learn that defendant had locked her inside the house. Both women also experienced significant difficulties with physical activities like walking and getting in and out of bed.

On multiple occasions, Pulkownik, an APS worker, expressed her concerns about O's and D's safety to defendant. Pulkownik explained that, given O's and D's physical conditions and the various impediments to accessing the homes, it was unlikely that emergency personnel would be able to get to O and D in time if something were to happen. However, defendant never took any action to address the problems. Eventually, APS made the decision to remove O and D from the property and place them in a residential memory-care facility. The state charged defendant with two counts of first-degree criminal mistreatment—one for defendant's treatment of O and another for defendant's treatment of D.

At trial, the state presented testimony from multiple witnesses about the various responders' visits to the property over a range of dates from 2014 to 2017. However, neither party requested an instruction requiring jurors to agree on which of the dates evidenced a criminal violation, and defendant did not object to the failure to give such an instruction. Defendant was convicted on all charges.

On appeal, defendant assigns error to the trial court's failure to provide a jury concurrence instruction. Although she concedes that the assignment of error is unpreserved, she argues that it was nevertheless plain error for the trial court not to provide such an instruction *sua sponte* when there was evidence of multiple incidents which the jury could have determined violated the statute on each count.

## II.   STANDARD OF REVIEW

Whether a trial court is required to give a particular jury instruction "is a question of law, which we review for

legal error, viewing the evidence in support of the instruction in the light most favorable to [the party seeking the instruction].” *State v. Theriault*, 300 Or App 243, 250, 452 P3d 1051 (2019) (internal quotation marks omitted). Because the error here is unpreserved, we review only for plain error—that is, we may only correct (1) errors of law (2) that are “apparent,” meaning obvious and not reasonably in dispute, and (3) that appear on the face of the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). If those criteria are met, we must decide whether to exercise our discretion to correct the error. *Id*. at 382.

## III.   ANALYSIS

Under Article I, section 11, of the Oregon Constitution, jurors can return a verdict of guilty only if they agree on “the facts that the law (or the indictment) has made essential to a crime.” *State v. Arellano-Sanchez*, 309 Or App 72, 81, 481 P3d 349 (2021) (internal quotation marks omitted). Essentially, the jurors must agree not just that defendant is guilty, but on “just what defendant did.” *State v. Rolfe*, 304 Or App 461, 466, 468 P3d 503 (2020) (internal quotation marks omitted). Two scenarios implicate that right: the first is when a statute defining the crime provides multiple ways that the crime can be committed, and the second is when a defendant is charged with “a single occurrence of each offense, but the evidence permit[s] the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator.” *State v. Trenary-Brown*, 311 Or App 579, 583, 489 P3d 1114 (2021) (internal quotation marks omitted). When a case presents one of these two scenarios, defendant is entitled to either an instruction requiring jurors to agree on the basis for their verdict or an election by the state as to how it is assigning liability. *State v. Ashkins*, 357 Or 642, 659, 357 P3d 490 (2015).

Defendant contends that this case presents the second scenario: that the state’s witnesses described several incidents that the jury could have determined constituted the charged violations and thus that she was entitled to a concurrence instruction. To evaluate that argument, we begin by examining the charging instrument and the

elements of the crime. *See Arellano-Sanchez*, 309 Or App at 83-84. Defendant was charged with violating ORS 163.205 (1)(b)(C), which prohibits a person who has assumed a duty to provide care for an elderly person from knowingly or intentionally "[l]eav[ing] the *** elderly person unattended at a place for such a period of time as may be likely to endanger the health or welfare of that person." The crime has four elements: (1) a culpable mental state; (2) that the victim is an "elderly person"; (3) that defendant has assumed a duty to provide care for the victim; and (4) that defendant left the victim unattended at a place for such a period of time as may be likely to endanger the victim's health or welfare.

Here, defendant argues, the jury was likely confused because there was evidence in the record that defendant left both O and D unattended multiple times under conditions likely to endanger their welfare. We address each victim in turn.

A.   *Mistreatment of O*

Defendant argues that the record contains evidence of multiple instances when she could have committed the violation on the count concerning O by leaving her unattended under conditions that the jury could have determined endangered her welfare. The state concedes this point and we agree.

The jury heard testimony about events involving O on several different dates. On February 2, 2017, Pulkownik and Linn County Sheriff's Deputies McBride and Keys went to the property to perform a welfare check on O. When they arrived at the front gate, Pulkownik and the deputies were unable to unlock the gate themselves or contact defendant by phone, so they climbed over the fence. They went to O's house and found the door locked and the windows obstructed so that they could not see in. After knocking without response, they tried defendant and D's house, where defendant answered the door and then let Pulkownik and the deputies into O's house. Pulkownik observed that, physically, O had limited mobility and needed someone else to help her with her daily needs. When asked what she would do in an emergency, O told Pulkownik that she would get

in contact with defendant. However, Pulkownik determined that it was unlikely that O would be able to do so because she was cognitively impaired—she did not know where the phone was, where the bathroom was, or whether she had a family.

Later, on an unspecified day that same February, a group of firefighters/paramedics responded to a signal from O's medical alert bracelet. When the group could not get past the gate, they climbed over and went to O's house where all the doors were locked. Although the fire chief was able to reach defendant at her house, she was unable to open the locks on O's door. The group forced entry only to encounter a second locked door, which defendant had to crawl in through a dog door to open. In total, it took 25 minutes to be able to get inside and assess O's condition.

Finally, on April 3, McBride, Pulkownik, and others went to the property to assess O's and D's conditions. When they arrived at the property, defendant was not there. After encountering the usual difficulties with the gate, Pulkownik, McBride, and the others climbed over and went to O's house, where they found the doors locked and the windows blocked with bars and various pieces of large furniture. After unsuccessfully trying to remove a window to get inside, McBride called out to O and asked her to let them in. Although O heard them, it took her "quite a bit of time just to be able to get up on her feet" and her movements appeared to be slow, labored, and painful. O was not able to open a door.

On all three occasions, the state's witnesses described essentially the same scenario: defendant left O—an elderly woman with significant physical and cognitive impairments who had no ability to seek help in the event of an emergency—unattended and locked inside a home with several obstacles to entry. Given that information, the jury could have determined that leaving O unattended on any of the three dates was likely to endanger her welfare and thus violated ORS 163.205.

Under these circumstances, where the evidence permitted a finding that defendant committed the charged offense on any one or more of several instances, defendant was entitled to an instruction that jurors had to agree on

which instance was the basis for their verdict. *See State v. Slaviak*, 296 Or App 805, 810-11, 440 P3d 114 (2019) ("[W]hen an indictment charges a single occurrence of each offense, but the evidence permit[s] the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator, * * * it is beyond dispute that a jury concurrence instruction * * * is required." (Internal quotation marks omitted.)). However, that conclusion does not end our inquiry.

Because defendant did not preserve her argument, the next step in our analysis would ordinarily be determining whether the trial court committed plain error by failing to provide a concurrence instruction *sua sponte*. However, in this case, we need not reach that issue. Assuming, without deciding, that the trial court's failure to give the concurrence instruction was plain error, we conclude that the error was harmless—that is, "there is little likelihood that, if it had been given the concurrence instruction[,] * * * the jury would have reached a different result." *Ashkins*, 357 Or at 664.

According to defendant, "the jurors easily could have based their verdicts on different occurrences, resulting in impermissible 'mix-and-match' verdicts," considering that the prosecutor specifically told the jury that defendant left O unattended under dangerous conditions "multiple times," including in both February and April. However, for the reasons explained below, we agree with the state that there is no reasonable likelihood given the parties' arguments that the lack of a concurrence instruction would have changed the verdict. *See id.* at 660 (evaluating harmlessness of failure to give concurrence instruction in light of "the parties' theories of the case with respect to the various charges and defenses at issue").

The state's theory of the case invited jurors to treat defendant's conduct as a continuing and progressive course of mistreatment, and defendant's theory was that no mistreatment occurred at all. During closing arguments, the prosecutor argued that the various conditions on the property—including the locks (both on the front gate and on the doors), furniture barricades, and various tripping and

fire hazards—posed a danger to O's health or welfare without differentiating between which conditions were present on one day as opposed to another. Likewise, in responding to the state, defendant did not distinguish individual dates or times and make specific arguments as to why the conditions on those dates fell short of violating the statute. Rather, she made a similar sort of undifferentiated argument that the conditions of the property at no point posed a significant threat to O's safety. *Cf. Theriault*, 300 Or App at 256 (recognizing that a "sweeping denial" is more likely to be harmless than a defense theory particularized to challenging specific incidents).

The evidence presented was consistent with the state's theory of the case—the conditions did worsen over time between February and April. All of the dangerous conditions in February, including the locks (both on the front gate and on the doors) and the window obstructions, were also present in April. By April, however, witnesses testified that there was a large amount of clutter on the floors and that defendant was entirely absent from the property. Defendant's argument did not distinguish between the dates, but rather contended that the ongoing conditions did not violate the statute at all, a theory the jury rejected. Because no evidence or testimony described any dangerous condition in February that was not also present in April, there is no reason to believe that any juror would vote to convict defendant based on her conduct in February but not April. In other words, the only lack of concurrence that plausibly would have occurred is whether defendant committed the crime at *both* times, not one or the other. Accordingly, we conclude that the failure to provide the jury a concurrence instruction was harmless with respect to the count involving O. *See Ashkins*, 357 Or at 664.

B.   *Mistreatment of D*

With respect to the count involving D, defendant also argues that there was evidence of two incidents when she left D unattended under potentially dangerous circumstances such that the jury might have been confused about the basis for its verdict: once in 2013 and once in 2017. In 2013, defendant argues that the jury could determine that

she violated the statute based on the testimony of her neighbor, Musch, that he saw her leave the property alone, sometimes for hours at a time.

However, the need for a concurrence instruction is governed by the charging instrument. *See Arellano-Sanchez*, 309 Or App at 83 (looking to indictment to determine whether concurrence instruction was required). Here, the indictment charged defendant with criminally mistreating D "on or between October 1, 2016 and April 4, 2017." As a result, the jury was instructed that, to return a guilty verdict on that count, it had to find that "[t]he act occurred on or between October 1, 2016 and April 4, 2017." Because Musch's testimony did not concern events falling within that time period, there is no reason that any jurors would have based their verdict on his testimony. Accordingly, the trial court did not commit error, plain or otherwise, in failing to give a concurrence instruction on the count concerning D and we affirm defendant's conviction.

## IV.   CONCLUSION

In sum, we conclude that the trial court erred in failing to provide a concurrence instruction on the charge involving O, because there were multiple incidents in the record that the jury could have determined violated ORS 163.205. However, because that error was harmless, and because the trial court did not err as to the charge involving D, we affirm defendant's convictions.

Affirmed.