No. 295 April 8, 2026 457

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TONY JAHMEL FREEMAN,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR04049; A184049

Benjamin N. Souede, Judge.

Submitted February 4, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Oregon Public Defense Commission, filed the opening brief for appellant. On the reply brief was Lindsey Burrows.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for first-degree criminal mistreatment and third-degree assault. Both convictions relate to defendant's use of physical discipline against his six-year-old son, A. In his first assignment of error, defendant contends that the trial court erred in denying his request for a jury concurrence instruction. In his second assignment of error, defendant argues that the trial court erred in allowing a social worker to testify that marks on A's back looked "kind of like bruises from, like, being whipped." For the reasons explained below, we affirm.

*Facts.* Defendant's three children were spending the weekend with him on his boat when A accidentally dropped an iPad into the river. A's sisters, aged eight and nine, were present at the time, and defendant was not. When defendant later could not find the iPad, all three children denied knowing where it was. One of the girls eventually told defendant that A dropped it in the river. Defendant called the children into the living room area and had them sit on the couch. He explained that he would be physically disciplining them. He struck all three children with the cloth portion of a key lanyard, of the type worn around the neck, which he chose because it was "the closest thing that I could get at the time" and "the safest material." He then told the children to go to their room. As A got up, and while the girls were still on the couch, defendant grabbed A, held him to the ground, and used his hand to strike A's back and legs. He did so because A was the one who dropped the iPad and because A had been exhibiting other behavioral issues. Defendant then again told the children to go their room, and all three children left. A had bruising on his back, legs, and arms for weeks after the incident.

Defendant was criminally charged. At trial, he did not dispute striking all three children with the cloth lanyard, nor did he dispute striking A with his hand and causing bruising. He instead relied on the affirmative defense of reasonable physical force for purposes of parental discipline. *See* ORS 161.205(1)(a) ("A parent or legal guardian of a minor child may use reasonable physical force upon the minor child when and to the extent the person reasonably believes the

physical force is necessary to maintain discipline or promote the welfare of the minor child[.]"). Defendant testified that he did not intend to injure the children, only to discipline them, and explained the importance of discipline to him as a Black person raised in the South.

In discussing jury instructions, defendant asked the trial court to give a concurrence instruction on the charges pertaining to A. Defendant argued that, to find him guilty, the jurors should be required to agree on a specific act by defendant—either striking A with the lanyard or striking A with his hand. He argued that there was some temporal break between the two acts, although he acknowledged that there was no change of location and no evidence of a break of any particular duration. The court concluded that the two acts were part of a continuous course of conduct under *State v. Arellano-Sanchez*, 309 Or App 72, 481 P3d 349, *rev den*, 368 Or 511 (2021), and denied the instruction request on that basis.

The jury subsequently found defendant guilty of the two charges pertaining to A. It acquitted him of the charges pertaining to the other two children.

*Jury concurrence.* When an indictment charges a single occurrence of a particular offense, but the evidence would permit finding "multiple, separate occurrences of that offense," the jury must concur on a specific occurrence to find the defendant guilty of that offense. *State v. Ashkins*, 357 Or 642, 659, 357 P3d 490 (2015); *see, e.g.*, *State v. Teagues*, 281 Or App 182, 383 P3d 320 (2016) (holding that a concurrence instruction was required where the defendant was charged with one count of fourth-degree assault and the state presented evidence that defendant pushed the victim while outside, causing her to scrape her knee, and sometime later choked her inside the house). Defendant argues that that is the case here and that the court erred in denying his request for a concurrence instruction. Specifically, he contends that the jury should have been required to concur on whether it was the striking with the lanyard or the striking with the hand—two different mechanisms of injury—that caused A substantial pain. That was particularly important, in defendant's view, given his affirmative defense, which required

the jury to decide whether his conduct constituted reasonable physical discipline. The state maintains that the court properly denied the instruction because the two acts were part of a continuous course of conduct. We review the decision not to give a concurrence instruction for legal error. *Arellano-Sanchez*, 309 Or App at 79.

As relevant to the need for a concurrence instruction, a series of acts are treated as separate occurrences of an offense when the acts were "temporally, spatially, and substantively distinct," *i.e.*, when they "occurred at different times, in different spaces, and were the cause of different injuries." *State v Theriault*, 300 Or App 243, 252, 452 P3d 1051 (2019) (internal quotation marks omitted). Conversely, when acts were part of a continuous course of conduct without meaningful temporal, spatial, or substantive distinctions, they are treated as part of a single occurrence. *Arellano-Sanchez*, 309 Or App at 85.

We agree with the state that, on this record, and given the arguments made by the parties, the trial court did not err in denying defendant's request for a concurrence instruction. The two acts at issue here—striking with lanyard and striking with hand—were not temporally or spatially distinct. They took place in a single location, the living room area, and the only reasonable inference on this record is that they took place in immediate succession and only seconds apart. *Compare Arellano-Sanchez*, 309 Or App at 85-86 (no concurrence instruction required where the defendant and the victim engaged in continuous, unbroken combat for less than five minutes and the complainant had a cluster of knife wounds), *with Theriault*, 300 Or App at 252-53 (concurrence instruction required where the defendant assaulted the victim repeatedly over a one-to-two-hour period, including pushing, choking, and punching her at various points; he did so both inside and outside the apartment; there were significant breaks between physical acts; and the victim suffered multiple, distinct injuries, rather than "a single injury or a cluster of injuries").

As for whether the two acts were substantively distinct, it is true that one involved defendant holding a lanyard, while the other involved defendant's bare hand, and

that the bruises caused by each act looked different, with the lanyard bruises being long and thin and the other bruises being rounder and in different locations on A's body. We are unpersuaded that those differences make the acts substantively distinct so as to require a concurrence instruction. The state was required to prove that defendant caused "physical injury" to A as an element of both first-degree criminal mistreatment, ORS 163.205(1)(b)(A), and third-degree assault, ORS 163.165(1)(h), and it could so by showing that A suffered "substantial pain," ORS 161.015(7). "Substantial" refers to both the degree and the duration of the pain subjectively experienced by a person. *State v. Roberts*, 293 Or App 340, 344-45, 427 P3d 1130 (2018). Here, both acts caused bruising that lasted for weeks. Any differences between the bruises were insufficient to make the injuries substantively different.

The trial court did not err in declining to give a concurrence instruction.

*"Whipped" testimony.* Defendant next argues that the trial court erred in allowing testimony that the marks on A's back appeared to be caused by whipping. An investigator for Washington State's child protective services agency testified at trial. When the prosecutor asked her to "describe the marks on [A's] back," she stated that they were "[k]ind of like bruises from, like, being whipped." Defense counsel made a speculation objection, and the court asked the witness to clarify the basis for her testimony. The witness then testified that, from "prior experience, it looked like *** it would have been caused from that." The trial court overruled the speculation objection.

On appeal, defendant argues that the court erred in allowing expert testimony without a proper foundation. We agree with the state that that claim of error is unpreserved. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."). To preserve a claim of evidentiary error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the [trial] court can identify its alleged error with enough clarity to permit it to consider and correct the

error immediately, if correction is warranted." *Id*. at 343. Defendant's "speculation" objection was sufficient to preserve a claim of error related to speculativeness generally, and, to the extent defendant challenges the court's ruling on speculativeness generally, we see no error. The objection made was insufficient, however, to preserve a claim of error relating to expert witness qualifications or inadequate foundation for expert testimony.

It follows that any review of the alleged error would be limited to discretionary plain-error review. *See* ORAP 5.45(1) (as to unpreserved claims of error, we have discretion to correct a "plain" error); *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (an error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record). The error does not appear to be plain, and, in any event, defendant has not requested plain-error review. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (we ordinarily will not conduct plain-error review absent a request from the appellant and arguments as to why the error is plain and why we should exercise our discretion). We reject the second assignment of error.

Affirmed.